## MILTON PETTY *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder. Identity of defendant. Credibility of witness. Instruction.*

   The identity of the murderer being the only question in the case, and it having been shown that the only witness for the state, whose testimony tended to identify the defendant as being the guilty party had stated that he did not at the time of the homicide recognize the murderer, it was error to refuse defendant an instruction directing an acquittal, unless the jury believed, beyond every reasonable doubt arising from the evidence, that said witness saw and recognized defendant at the time of the killing.

2. SAME. *Circumstantial evidence. Reasonable hypothesis.*

   A conclusion of guilt should not be drawn from circumstantial evidence if any other reasonable hypothesis may be drawn therefrom, and where there is evidenc to support such hypothesis it is error to refuse defendant an instruction to that effect.

3. SAME. *Evidence of feelings toward deceased. Reconciliation.*

   Where defendant was on trial for killing his wife, the state having shown that there had been trouble between them, and that he had threatened to kill her unless she returned to him, it was error to deny defendant the right to prove that they had afterwards become friendly, and that she had agreed to return to him.

FROM the circuit court of Washington county.

HON. A. McC. KIMBROUGH, Judge.

Petty, appellant, was indicted, tried, and convicted of the murder of his wife, and appealed to the supreme court from a sentence to death therefor.

The principal witness for the state was one Chapman, who testified that deceased, Martha Petty, was his sister-in-law, and had left defendant's home, and was staying at his house; that on the night of July 22, 1902, about 2 o'clock, some one entered the house, and shot and killed Martha with a shotgun; that at the report of the gun he sprang from his bed, and went to the room where Martha was, and he saw defendant running away; that it was a bright night, and the moon shining; that he followed defendant into Bolivar county and arrested him; that he was certain he recognized Petty at the time of the homicide. Other witnesses testified that there had been some trouble between defendant and his wife, and that they heard him tell her two or three weeks before she was killed that he would kill her unless she went back home and lived with him. The defense was an alibi. There were some witnesses who testified for the defense that witness Chapman stated in their presence that he did not know that it was Milton Petty he saw running away from the house the night of the killing, that he only saw the man while running away and did not recognize him. The defendant offered to prove that he and his wife had become friendly before the killing, and that she was going back to live with him. This was objected to, and the objection was sustained.

The sixth, seventh, and eighth instructions asked by defendant and refused were as follows:

"No. 6. The court instructs the jury that unless they believe beyond every reasonable doubt that the witness, Harry Chapman, saw and recognized the defendant on the night of the killing, as stated by him, they will acquit the defendant.

"No. 7. If the evidence in the case leaves it indifferent which of several hypotheses arising and growing out of the evidence in

the case is true, or merely establishes some finite probability in favor of the hypothesis of guilt, rather than another, such evidence cannot amount to legal proof of guilt, however great the probability may be.

"No. 8. In the application of circumstantial evidence to the determination of the case, the utmost caution and vigilance should be used. It is always insufficient when, assuming all to be proved which the evidence tends to prove, some other reasonable hypothesis, arising and growing out of the evidence in the cause, than the one sought to be established by the evidence, may be true. It is the result based on the exclusion of every other reasonable hypothesis arising and growing out of the evidence in the case than that sought to be established by it that will authorize the jury to act upon it, and give the circumstances the force of truth in the particular case."

*Jayne & Watson,* for appellant.

The only question presented in this case for the consideration of the court is whether the appellant, Milton Petty, committed the crime with which he was charged and convicted. His defense was an alibi. On the trial of the case, the state was permitted to prove that the appellant had threatened to kill his wife, and the first error assigned by the appellant is that the court below erred in not permitting him to show that at the time of the killing he and his wife were on friendly terms.

If it was proper for the state, as we concede, to undertake to show a motive for the killing, it was equally proper for the defendant to show that the motive contended for by the state did not exist.

Instruction No. 6, asked by defendant, simply told the jury that unless they believed from the evidence beyond every reasonable doubt that witness Chapman saw and recognized the defendant on the night of the killing, as stated by him, they would acquit him; it was certainly the right of the defendant to call the attention of the jury to the fact that they must so believe be-

fore they could convict, because in no other way and by no other witness was defendant identified as the person who committed the murder, and the sole question presented to the jury was as to who did the killing and it was certainly proper to have the attention of the jury called to the testimony of witnesses showing that Chapman stated that he didn't recognize the defendant upon that night.

Instruction No. 7 asked by defendant simply states an indisputable proposition of law, that while there were several hypothesis arising out of the evidence that the defendant is entitled to every reasonable doubt and the jury should acquit. This instruction ought not to have been refused.

Considering the conflict of testimony as to the recognition of the defendant by Chapman on the night of the killing, we think that the defendant was certainly entitled to this instruction. *Josephine* v. *State,* 39 Miss., 613.

*J. N. Flowers,* assistant attorney general, for appellee.

Since the state was permitted to show that accused had separated from his wife and had threatened to kill her if she did not return to him, the defendant ought to have been permitted to show that their differences had been adjusted, as counsel contend. But he was allowed to testify that they were friendly when they last saw each other, and she had agreed to return to him, and that he was to go after her the following Saturday.

Instruction No. 6 was properly refused because it proposed to base the entire case upon Chapman's testimony that he "saw and recognized" the defendant on the night of the killing. The jury might have believed that he saw defendant but did not recognize him that night; or they might have believed that he neither saw him nor recognized him, and yet from other and all the circumstances proved they might have believed him to be the man who did the killing.

The law set out in instructions Nos. 7 and 8 is sound; and the court would not have erred, perhaps in giving them. But

no harm was done defendant because the law is very carefully written out in other instructions, and because the main fact was proved by evidence not really circumstantial. The shot was heard, Chapman ran to the room and saw the defendant leaving with his gun. This can hardly be called a case of circumstantial evidence in which this special instruction would be important.

TRULY, J., delivered the opinion of the court.

Under the facts of this case, the action of the court in refusing the sixth instruction asked by the defendant was error. The sole question for determination was the identity of the murderer, and upon this point the only direct testimony introduced by the state was that of witness Chapman. It was perfectly proper, therefore, that the defendant should have had submitted to the jury the question of whether or not, in their judgment, the testimony of Chapman as to the identification of the defendant, under the circumstances detailed, was trustworthy.

It was error in the court to refuse the eighth instruction asked by the defendant. This was a case of circumtsantial evidence, and therefore the instruction was perfectly proper.

We also think that the seventh instruction asked by the defendant should have been given, but, as the same idea was embodied in other instructions, we would not, on this ground alone, reverse the case.

The modification of the fourth instruction asked by the defendant was correct.

Inasmuch as the state was permitted—and properly so—to show the state of feeling existing between the defendant and deceased, the defendant should have been permitted to show, in any way in his power, that there had been an amicable adjustment of these differences anterior to the killing.

*For the reasons above indicated, the case is reversed and remanded.*