PICKETT v. STATE.*

(In Banc. June 8, 1925.)

[104 So. 358. No. 24554.]

1. CONSPIRACY. *Homicide. Conspiracy may be shown by circum-
    stantial evidence; evidence held sufficient to establish conspiracy
    to kill.*

    A conspiracy may be shown by circumstantial evidence as well as
    by direct evidence. The evidence in this case is sufficient to es-
    tablish a conspiracy between the appellant and his brothers.

2. HOMICIDE. *Persons committing felony, armed to resist arrest, and
    not surrendering when called on by officers attempting to arrest
    them, cannot shoot even to defend their lives without first offer-
    ing to surrender, regardless of whether officers fired first shot.*

    Where persons are engaged in the commission of a felony, and
    armed for the purpose of resisting arrest, and do not surrender
    when called upon to do so by officers seeking their arrest, they
    cannot shoot even in the defense of their lives without first offer-
    ing to surrender, and this is true even though the officers seek-
    ing the arrest may have fired the first shot. *Tolbert* v. *State,*
    71 Miss. 179, 14 So. 462, 42 Am. St. Rep., 454, cited.

139 Miss.—34.

3. CRIMINAL LAW. *Evidence obtained at time and place of killing showing existence of moonshine whisky still, which was being operated, may be offered in evidence.*

In a trial for homicide committed in resisting arrest while engaged in committing a felony, where the officers seeking to arrest had knowledge, or probable grounds for believing, that a felony had been or was being committed, evidence obtained at the place and time of the killing showing the existence of a moonshine whisky still, which was being operated, may be offered in evidence.

4. ARREST. *Officer having knowledge or probable grounds for believing that felony is being committed may go on premises without warrant for arrest, and without search warrant, and arrest for felony.*

Under such circumstances the officer may go upon the premises without a warrant for arrest, and without a search warrant, and make an arrest for a felony committed, which felony such officers had probable cause to believe was being committed or had been recently committed.

5. CRIMINAL LAW. *Witness tendered to prove disqualifications of juror and committing perjury may be bound over to answer grand jury; binding over witness committing perjury, in absence of jury, is not error prejudicial to accused.*

In impaneling a jury, where a juror has qualified, and it is sought to prove by another witness expressions by such juror prior to his being sworn, showing that he had formed and expressed an opinion, where such witness so tendered to prove such statements has manifestly committed perjury, the judge may have him bound over to answer the grand jury therefor; and where this is done in the absence of the jury, no error is committed prejudicial to the defendants.

6. HOMICIDE. *Excluding evidence of indefinite, vague, or conditional threat offered by accused to show excuse for fleeing held not error.*

It is not reversible error to exclude evidence of an indefinite, vague, or conditional threat offered by the defendant for the purpose of showing an excuse for fleeing after the commission of the homicide.

7. CRIMINAL LAW. *Mere offer on part of district attorney to prove bad character of accused, who had not placed good character in evidence, held not reversible error.*

A mere offer on the part of the district attorney to prove the bad character of a defendant on trial for a felony, where the defendant has not placed his good character in evidence, while improper, is not reversible error where the judge refused to permit such evidence.

8. WITNESSES. *Person jointly indicted with accused, not on trial but testifying for accused, may be impeached by contradictory statements made by him as to commission of offense.*

Where two or more parties are jointly indicted for the commission of a felony, and one not on trial testifies as a witness for the one on trial, he may be asked as to statements made by him while in jail as to the circumstances attending the homicide, and such statements, if voluntarily made, may be shown in contradiction of his evidence for the purpose of affecting his credibility as a witness, if such testimony, if given on the trial by such witness, would tend to establish the guilt of the defendant.

---

*Headnotes 1. Conspiracy, 12 C. J., sections 226, 231; Homicide, 30 C. J., section 548; 2. Homicide, 30 C. J., section 257; 3. Criminal Law, 16 C. J., section 1110; 4. Arrest, 5 C. J., section 30; On liability of officer for making an arrest without a warrant, for felony, see note in 51 L. R. A., pp. 203, 225; 2 R. C. L., pp. 450, 451; 1 R. C. L. Supp. 543; 4 R. C. L. Supp. 111, 5 R. C. L. Supp. 97, 98; 5. Criminal Law, 16 C. J., section 2109; 6. Homicide, 30 C. J., section 440; 7. Criminal Law, 17 C. J., section 3655; 8. Witnesses, 40 Cyc., p. 2690.

APPEAL from circuit court of Lauderdale county.
HON. C. C. MILLER, Judge.

Ben Pickett was convicted of murder, and he appeals. Affirmed.

*Wm. B. Lucas* and *Jacobson & Brooks,* for appellant.

This entire case was tried upon the theory that Ben Pickett was making or assisting in the making of liquor. There was not the slightest evidence that this was a fact. Ben Pickett's presence at the still was accounted for by the owner and operator. Can it be said seriously that the record says to the contrary. The writer says confidently no.

The trial judge evidently believed it was a close case, because he permitted the introduction as evidence of the threats made by the prohibition officer, as well as his bad reputation for peace and violence. This is done under the law when there is doubt as to who was the aggressor. No serious consideration can be given this record and es-

cape the idea that even from the state's side that it makes out a case of self-defense for the appellant.

The appellant's case overwhelms the state upon that contention, unless it is the law that Ben Pickett was not entitled to the benefit of self-defense on that occasion. Of course, if this is the law, that Ben Pickett, a disinterested spectator, had no right to protect himself when approached and fired upon, then it would be useless to argue further.

If we are correct that the case was of such a nature as to justify an acquittal under normal conditions, we feel now that we should seriously ask the court to reverse on the facts of this case; that is to say, to discharge the appellant in this court. At any rate the case is so close that manifest error is calculated to bring unjust and illegal results.

The fifth assignment of error is directed at the action of the court in requiring appellant to peremptorily challenge juror Wright when the court had information that Wright had said the appellant ought to be hung.

The seventh assignment of error is directed at the action of the court in holding an investigation in the court-house regarding witness McDonald, who had advised appellant's attorneys involuntarily that juror Wright was disqualified.

In discussing these assignments of error, the court is advised that, from the very nature of things, public interest and excitement was at fever heat in Lauderdale county following the death of Cleveland. His body lay at the Undertaker's shop, the picture of the still where the shooting took place was exhibited in every public window of the city. It was the topic of the conversation in every nook and corner. It came to the writer's attention that Wright had expressed an unfavorable opinion as to appellant to the effect that he ought to be hung. Wright had been accepted the evening before. Upon getting information as to Wright's statement, after the appellant only had one peremptory challenge left, and after the motion was made to reopen for cause, and after witness

McDonald had testified to that effect, and after a searching inquiry by the court, he, the witness, was held to await the action of the grand jury for perjury.

We were certainly entitled to twelve challenges, peremptory in their nature. We were certainly entitled to remove any juror for cause. It was shown that juror Wright had expressed an opinion that they ought to be hung. The court ignored this, and in order to get rid of him, we were required to exhaust our only remaining challenge upon him. We submit that this is one of the assignments of error that makes it imperative for this case to be reversed.

The eighth and ninth assignments of error complain of the action of the court in permitting the state, over appellant's objection to introduce in evidence and make profert of the same, certain whiskey stills, which it is alleged were taken from the scene of the shooting of Dan Cleveland by other witnesses after the shooting of Cleveland.

It must be borne in mind that there was not the slightest evidence in the record of any kind that Ben Pickett had any ownership, or any control in the operation of any whiskey stills. Yet, while he was tried for murder, the homicide growing out of his presence at his brother's whiskey still, the court overruled his objection, and permitted the state to bring such stills into the presence of the jury, and keep them during a thirteen-day trial in their presence and view all the time while they were considering the question of the guilt or innocence of Ben Pickett when he was defending the homicide case upon the ground that he was within his self-defense.

It may be argued that these stills should be introduced and considered as evidence, because of a conspiracy upon the part of the Picketts to kill Cleveland; yet, the record may be examined from one end to the other, and there is not the slightest evidence of any kind which even smacked of a conspiracy. The only connection of any kind that there might have been a conspiracy was in the testimony of Ebb Pickett while he was in the condemned

cell of the Lauderdale county jail that he made a statement, not in the presence of Ben Pickett, to the effect that the still was owned by Ben Pickett and Clyde Pickett. This was a declaration after the alleged incident made by Ebb Pickett in the absence of Ben Pickett.

It is again argued and urged to the court that even if these stills belonged to Ben Pickett, they could not have been introduced in evidence, because there was no showing before the court that their presence was procured by lawful means. They were not secured with a search warrant, and there was no evidence before the court that there was any lawful or legal search or investigation made before the implements were actually brought into court.

We are not unmindful that Ben Pickett could not complain as to an illegal seizure and search of Clyde Pickett's property, where it was offered in evidence as against him, but this was on a proposition where the man was actually charged with the making of liquor, and a seizure and search was made of a person's premises, and this court held—that where the evidence was illegally secured by an illegal search warrant of one's premises, that another person aiding and abetting and owning no part of the premises could not complain if the search was an illegal and unlawful search. In this case, though, Ben Pickett was charged with murder, and while being tried for murder the state brought in the implements and tools for the manufacture of intoxicating liquor, one of the things that the state contended was the contributing cause to the homicide.

With their presence in the courtroom during the trial of Ben Pickett, charged with killing a prohibition officer, when the killing actually happened and took place around several stills, there can be no doubt of the great prejudicial, injurious effect that it had over the outcome of the trial, and there can be no doubt but what it was harmful and calculated to bring about improper results. The appellant urges this assignment by itself, as being sufficient to reverse this case.

The law wisely says that proof of an escape, or an attempted escape is a circumstance which the jury have a right to consider in the matter of fixing guilt upon the party. The law also says that if there is an explanation of any kind, which the appellant or defendant has, that it is competent for that explanation to be submitted to the jury, so that they cannot only consider the escape, but consider the explanation for the same, for the reason that it is not every kind of escape that can be a circumstance conclusive in its nature that the defendant realized that he was guilty and left the scene.

That Pickett apprehended danger after the death of Cleveland, there can be doubt. A raw country boy, engaged in a shooting affair with a prohibition officer, and having come out alive, it is evident that his mind went back to the statements which came to his knowledge made by the county attorney of Lauderdale county to Strickland. Attention is directly called to the fact that Strickland at the time he got this information from Mr. Ethridge, had gone to the hospital to visit a patient who was dying from a wound that he had received at the hands of Cleveland. This man was named Lee, and he was shot in the back by Cleveland, the deceased. After shooting him, they took him to the hospital, and his friends were not permitted to see him, and when Strickland went to visit him in his last hours, he testified that he was confronted by the Lauderdale county prosecuting attorney, who advised him that if any prohibition officers were ever hurt in that neighborhood that summary punishment would be visited upon every body that lived there.

This statement was well calculated to excite terror in the mind and heart of Ben Pickett, and certainly when he was confronted with the proposition of taking Cleveland's life or losing his own, and after this had taken place, and he escaped for the time being, not going over fifty miles, it was a proper circumstance for the jury to have considered in connection with his escape his reason therefor, and when we were prepared to prove that he had this direct and positive information as to what would

be expected if a prohibition officer were hurt, it was competent for the jury to consider the same. The writer submits that it would not have been a circumstance of guilt for a man to leave under these circumstances, and when the court refused to permit the appellant to prove this circumstance, in our judgment he ran exactly counter to the doctrine laid down in 16 C. J. 555, sec. 1073.

The eleventh assignment of error deals with the court permitting the state to prove inferentially the bad reputation of Ben Pickett when the same had never been put into issue by Ben Pickett. Attention is particularly directed to that part of the record when the reputation of the deceased had been attacked successfully, and it had been shown that deceased's reputation for peace and violence was bad in the community in which he lived. The district attorney then and there in the presence of the jury, and over the objection of appellant, was permitted to offer and introduce in evidence the bad reputation of Ben Pickett. This was just as prejudicial as if it had actually been done. It then and there forced the appellant to make objection in the record to any such course as that being pursued. It is a well recognized and undisputed question of law that evidence cannot be introduced by the state as to a defendant's reputation for peace and violence, when the defendant has never put it in issue. There will be no dispute upon this proposition. It is elementary.

The twelfth assignment of error deals with the action of the court in permitting the testimony of witnesses Chapman and Shannon as to the statements made by Ebb Pickett when he was incarcerated in the condemned cell of the Lauderdale county jail. When the Pickett boys were arrested for the killing of Cleveland, as shown from the record, they were all separated after being incarcerated in jail. Ebb Pickett was confined to the condemned cell, and witness Chapman, a prohibition officer in charge of the prohibition forces in Mississippi, and Constable Shannon were permitted to go up to see him. These men without informing Ebb Pickett in the con-

demned cell, that what he said would be used against him, were permitted by the state authorities to cross-examine this man at length.  They testified that Ebb Pickett told them that the still belonged to Ben and Clyde Pickett.  This was in the absence of Ben Pickett, and yet these men were permitted to testify to this fact when Ben Pickett was put on trial for his life.  It violates every conceivable and elementary rule of evidence, and a mere statement of it, we feel is strong enough to allow this case to be reversed on this point.

The trial court permitted the state to introduce one Ethridge, who testified that Ebb Pickett had made a statement to him before the killing of Cleveland, that they intended to kill Cleveland.  Ebb Pickett, you will bear in mind, was the brother of Ben Pickett, and there was no testimony as to a conspiracy, and consequently the declaration or statement of Ebb Pickett after the alleged transaction, was incompetent as evidence, and should reverse this case.

While Mr. Cannady was on the stand he testified that he captured Ben Pickett fifty miles south of Meridian on the Buckatuna Creek at a fishing camp, and that Ben Pickett had driven an automobile to this point, and he tracked him by reason of his balloon tires.  The court will bear in mind that the automobile was captured by the sheriff, together with the prisoner; that he held the same, and this automobile was driven up to the courthouse by the sheriff, and exhibited to the jury.  The testimony in this case shows that this automobile belonged to Pickett's wife, but regardless to whom it did belong, whether to Ben Pickett or Ben Pickett's wife, it was secured illegally without warrant of law, without a search warrant, and its introduction in evidence violates every known rule of law.  This court has gone on record too many times on the proposition that property seized in violation of the search and seizure provision of our Constitution is incompetent evidence, as laid down in *Tucker v. State*, 128 Miss. 211; *Boyd* v. *United States*, 116 U.

S. 616, 29 L. Ed. 746; *Gould* v. *United States,* 65 L. Ed. 647; *Breen* v. *Williamson,* 7 How. Miss. 14; *Jackson* v. *United States,* 96 U. S. 727, 24 L. Ed. 877; *Weeks* v. *United States,* 58 L. Ed. 652; *Brown* v. *United States,* 42 L. Ed. 568; *Turner* v. *State,* 133 Miss. 738; *Watson* v. *State,* 133 Miss. 796; *Blowe* v. *State,* 130 Miss. 112.

With the peculiar inflation of public excitement, incident to law enforcement, which justifies the Government in placing man killers and blood-thirsty men in charge of law enforcement, there is no salvation, for a man who successfully terminates a life and death struggle with an officer who wears a badge, but the saving grace and Red Sea of this court. An officer nursing a private grievance to his vanity, in his physical person, under the guise of his official authority, unlawfully invades one's premises. The owner defends himself and his home and castle. He survives. The officer succumbs, His death is heralded as an attack upon law. Public clamor under excitement demands a conviction in the name of the law. Without the moderation akin to this court, we are indeed helpless.

We feel that on the evidence alone Pickett was within his self-defense, and that this court should discharge him from further custody. If we are incorrect on this point, then it is submitted further that there can be no real doubt as to this case, both as to law and facts, but that is a close one.

On the assumption of the consideration of incompetent evidence, we are entitled to a new trial. Every man is entitled to a fair and impartial trial, and his constitutional guaranties. Every man is entitled to be treated as a human being. Even the lowest animal is entitled to self-defense.

The instructions for the state, as heretofore set out, were erroneous in principle. The evidence failed to establish murder. Pickett was within his self-defense. When this and constitutional guaranties are denied human beings under popular excitement and public clamor,

then the integrity of Government is involved and as-saulted.

Sow the state down in the salt of humility and sub-mission demanded by a verdict in this cause, and no green thing of her former proud civilization will remain. Instead of standing upon the pyramid of her sun-lit his-tory, kindling into enthusiasm and patriotism and love of her children, we shall behold her unfit for conditions of peace or war, and among her sister states wearing the robe of a pitiable social and political emasculation.

*J. L. Byrd,* Assistant Attorney-General, and *Chas. B. Cameron,* for the state.

At the time of this homicide, whiskey stills were in operation and whiskey was being made on them, and there were present at these stills three Pickett boys, the appellant, Ben Pickett, and his brothers Clyde Pickett and Ebb Pickett, and another party named Vardaman Fisher. Several members of the party were armed, in-cluding the appellant, who was armed with an automatic shotgun loaded with buckshot.

Immediately after Cleveland was shot and after Can-nady had been shot at, the Picketts and Fisher fled from the scene, and Ben Pickett was trailed through two or three counties and finally about nine o'clock at night on the same date, he was arrested at a fishing camp on Bucatuna Creek in Clarke county, some twenty or thir-ty miles from the scene of the homicide.

The appellant and the other parties at the still knew Cleveland and knew that he was a Prohibition Officer and they also knew Sheriff Cannady and knew he was the sheriff of Lauderdale county, Mississippi.

The appellant's defense was that he shot Cleveland in self-defense.; that the first he knew that Cleveland was approaching the still was a shot from Cleveland's rifle which hit him in the shoulder, and that believing his life was in danger he shot Cleveland. To bolster up his plea of self-defense he introduced many witnesses who testi-

fied that Cleveland's general reputation for peace and violence was bad, and other witnesses who testified to alleged threats made by Cleveland against appellant and against the Pickett boys in general.

The state's theory of the case was that these parties were all present at these stills manufacturing liquor and that Pickett carried out a premeditated design to kill Cleveland who had been hot on his trail and who had previously broken up several stills for appellant and his brothers, or that the deceased was killed to prevent an arrest.

By the fifth assignment of error, the appellant brings in question the action of the court in requiring the appellant to challenge the juror, G. W. Wright, when the court had information that Wright was a juror who had expressed an opinion to the effect that the defendant ought to be hung.

The record shows that the juror, Wright, had been accepted by both the state and the defendant and the court was undertaking to complete the panel, when counsel for appellant announced to the court that he had just been informed that the juror Wright, had made the statement that Ben Pickett ought to be hung, and he asked the permission of the court to re-open the examination of the juror, Wright, for the purpose of questioning him further along this line. And he introduced a witness by the name of McDonald, who testified that he heard Wright make such a statement. The examination of Wright, in the record, shows that Wright was a qualified juror, and after the McDonald witness had showed up, Wright was further examined and he still denied ever having made any such statement. McDonald in his testimony details what he says took place at the time he heard Wright make the statement in question. The court was not satisfied from the evidence adduced that the juror Wright had made the statement alleged to have been made by him, but he did permit the defendant to exercise a peremptory challenge on Wright, and Wright did not sit on the jury. The record shows that all of this took place at a time when

the jury had been retired and they were not within the hearing of the court.          •

Counsel says something about the court holding the witness McDonald for perjury, but we have searched this voluminous record very carefully, and we fail to find anywhere in the record where it is mentioned. We submit that this was a matter entirely within the discretion of the court, and that it did not affirmatively appear from the evidence that the juror, Wright, had actually made the statement charged to have been made by him, but if he did make the statement, the appellant was given the right and did exercise a peremptory challenge on Wright, so Wright disappears from the case. But appellant says that he was forced to use his last challenge on the juror Wright, and because of this he was forced to take three other jurors whom he did not want. Our answer to that is that there is nothing in the record to show that the last three jurors were not fair and impartial jurors, or that the defendant was caused any injury by taking these three jurors, and we are at a loss, too, to understand how one challenge could have reached the three jurors of whom he complains.

During the course of the trial the state introduced one of the whiskey stills which was taken from the battery of stills found there where the homicide was committed. Appellant vigorously protests against the action of the court in permitting this whiskey still to be introduced in evidence and shown to the jury. We submit, however, that this was not erroneous. The whole evidence, both for the state and the defendant, showed that the homicide occurred while the defendant and others were present and operating these stills, and that the still introduced was in fact one of the stills being operated there, and there never was any denial of the identity of the still. But appellant says it gave too much prominence to the illicit manufacture of whiskey, and that it was calculated to and did inflame the jury against appellant on account of the whiskey making. We do not think that view is tenable, for the conditions and circumstances there were all

in evidence by the witnesses who detailed the condition
of the ground there, the condition of the pine trees around
the still, and who fully described the stills themselves, and
testified that the stills were in operation and that whis-
key was running from the stills. We cannot see how
the actual stills would affect the case. It is true that
this still is evidence of another crime, but we submit that
it is so closely interwoven with the crime with which the
defendant was charged that it was admissible in evidence
as a part of the main crime. On this point we quote
from Underhill on Criminal Evidence, Second Edition,
sec. 88, 157.

A case containing exhaustive notes supporting this
doctrine is *People* v. *Molineux,* 62 L. R. A. 193. See
also the case of *Keel* v. *State,* 97 So. 522.

Another ground of objection to this evidence is that it
was not shown that the still was seized by virtue of a
valid search warrant, and that, therefore, its seizure was
unreasonable, invalid and unlawful, and that its pro-
duction under those circumstances was erroneous and
that it violated the law against unreasonable searches
and seizures. We submit that the complete answer to
that objection is that this still was not the property of
Ben Pickett, but the property of Clyde Pickett. That
being true, Ben Pickett could not complain because he
had no property rights in the still. See *Harris* v. *State,*
98 So. 349; *Falkner* v. *State,* 98 So. 691; *Lee* v. *City of
Oxford,* 99 So. 509.

The appellant complains of the refusal of the court to
permit the testimony of the witness Strickland as to cer-
tain threats made by one Ethridge, county attorney of
Lauderdale county, to go to the jury.

The object of the testimony was to show why Ben Pick-
ett left the scene of the homicide after the killing. We
submit, however, that this evidence was entirely irrele-
vant and incompetent for the reason that it never was
connected up and nowhere in the record does it appear
why Ben Pickett left the scene of the homicide. Of
course, it might be true that from this evidence it could

possibly be conjectured that Pickett left on account of these threats, but Strickland's testimony is very vague and indefinite because he says in his testimony that he does not know to what community Ethridge was referring when he said that he would get a gang of officers and go down in the community and wipe out the moonshiners, and neither does he know whether Ethridge knew that he lived in the Zero community or the Pickett community, and besides this was not a threat against Pickett but against moonshiners. And as we said before, it is not said by Pickett anywhere that this was the reason he left, so we submit that if it had been admitted it would not have amounted to anything, because it never was connected, and having been excluded, the court will not be put in error for so doing.

By the eleventh assignment of error the appellant complains of what he says was the action of the district attorney in offering to prove the bad character of appellant when his character had never been put in issue. Now we have searched this record thoroughly, and we do not find one line of testimony in it nor do we find any indications that the district attorney made any such statement, and it is not embodied in any special bill of exceptions, and we submit that the court cannot consider it.

By the twelfth assignment of error the appellant complains of the action of the court in permitting witnesses Chapman and Shannon to go into the jail and talk to Ebb Pickett, one of the defendants who had been jointly indicted with appellant, and there question and interrogate him, etc. Of course, the court had no power to prevent a person from talking to the prisoners who were in jail and who had not even been indicted and against whom no charge had been brought in court, and we do not presume that the gentlemen really intended to complain of this fact, but what they do complain of is the admission of the testimony of these witnesses as to what Pickett said. But we submit that this testimony was entirely relevant because Ebb Pickett testified about the acts of the defendant and deceased, and he was contradicted

in these statements which he made to Shannon and Chapman, and we submit that this testimony was entirely relevant and competent for the purpose of contradiction of 'Ebb Pickett on a most material matter.

By the thirteenth assignment of error, appellant complains of the action of the court in permitting witness Ethridge to testify to the effect that Ebb Pickett made a statement to him before the killing of Cleveland that they intended to kill Cleveland. We submit that this evidence was relevant for the reason that the testimony shows. that the appellant and his two brothers and Vardaman Fisher were there engaged in a joint mission, and the theory of the state is, and was substantiated by the evidence, that they had a common purpose and a common intent to kill Cleveland when he raided their still, and that this common purpose and intent was actually carried out when Cleveland was discovered approaching . the still. That being true, the declarations of the conspirator, Ebb Pickett, were relevant and material.

Appellant complains of the action of the court in permitting the district attorney during the closing argument for the state to bring in and make profert before the jury the boxes, barrels and pipes, and all the paraphernalia which they claimed was a whiskey still, which had been theretofore introduced in evidence, because they say that there was no testimony showing that same was owned, operated or controlled by Ben Pickett, and the profert of the same tended to annoy and embarrass the jury in giving an impartial consideration to the case of Ben Pickett. We do not think that there is any merit in this assignment. The still had been introduced in evidence and we submit that it had been properly introduced, as we have undertaken to show, and having been introduced in evidence, it was proper that the jury should see it and proper that the district attorney should in reasonable limitations have commented on it if he so desired. There does not appear in this record anywhere any objection of the appellant to the remarks of the district

attorney, and there is no bill of exceptions setting out any improper remark. We, therefore, conclude that his remarks were well within the bounds. We submit that there is no merit in this assignment of error.

The appellant and his brother made their escape from the scene of the homicide in a Dodge automobile, and when they were arrested at the fishing camp in Clarke county, the automobile was taken in charge by the sheriff. In this automobile there was found a pistol which belonged to the appellant. During the course of the trial the jury was carried down stairs to a street bordering along the courthouse yard, and in the presence of the defendant and the court, and under proper safeguards, inspected the automobile. There is nothing in the record to show what questions were asked or anything about what was done when this automobile was inspected, so we submit that the court will indulge the presumption that the circuit judge performed his duty, and that no error was committed by the judge while the automobile was being viewed. There is nothing to show the irrelevancy of this testimony in regard to this automobile, and we do not think it was of such character as to affect the verdict of the jury one way or the other, and we submit that its introduction was harmless.

Appellant complains of the granting of certain instructions for the state. We submit that all six of the instructions complained of were applicable to the facts in the case; that they embodied a fair presentation of the facts, and that they were correct. The appellant cites no authorities to sustain his objection to these instructions, but argues that they assume facts not shown by the evidence. We submit that the instructions were correct and that the court committed no error in granting them.

The state requested eight instructions which were given, and the defendant requested twenty-six which were given and twelve which were refused. The thirty-four which were given covered the case entirely, and they were fair both to the state and the defendant and clearly an-

nounced the law, and the defendant had the benefit of all the law to which he was entitled in this case.

Counsel have much to say in regard to the speedy trial given appellant, and the great interest taken therein by the public generally and the preachers of the community in particular. Of course, it is natural to suppose that public interest is great, and we can readily understand why, where a public officer of the law representing the majesty of the law, is shot down without any more chance than would be given a wild beast, and shot to pieces at a time when he was attempting to do his duty by arresting the appellant and his companion for a violation of the law. We think it ill behooves the appellant to complain of public interest in a matter of which he himself was the author. But whatever the interest and feeling may have been on the part of the public, we submit that there is not a line in this record which indicates that there was any passion, feeling or prejudice whatever against appellant, and, of course, this court can only be governed by what the record shows.

We submit that the verdict of the jury was amply supported by the evidence and that the state's case was clearly made out, and that the jury was fully and fairly instructed on every phase of the case, and we respectfully submit that viewing the record as a whole and construing the instructions as a whole, that there is no reversible error in the record, and that the cause should be affirmed.

Argued orally by *Hardin L. Brooks,* for appellant, and *J. L. Byrd,* Assistant Attorney-General, for the state.

ANDERSON, J., delivered the opinion of the court.

Appellant, Ben Pickett, was indicted and convicted in the circuit court of Lauderdale county of the crime of murder, and sentenced to the penitentiary for life, from which judgment he prosecutes this appeal. Appellant assigns as errors thirty-eight different acts of the trial

court, and argues most of them. As we view, it, the legal principles involved are well settled in this state. If there be any difficulty in the determination of the questions involved, it consists, not in deciding the legal principles, but in the application of undisputed legal principles to the facts of the case.

There is one assignment of error ably and elaborately urged, and upon the determination of which several other assignments of errors depend; that is, whether or not there was sufficient evidence to go to the jury on the question of conspiracy between the appellant and his brothers, who were at the still when Cleveland, the federal prohibition officer, was killed.

When the sheriff, Cannady, and the deceased, Cleveland, approached the still, according to the state's evidence, a volley of shots were fired at Cleveland from around and behind the still where appellant and his two brothers were stationed. According to the testimony of the sheriff, these shots were fired before either he or the deceased, Cleveland, fired, and after the latter had, in effect, demanded that appellant and those with him at the still lay down their arms and surrender, for Cleveland's demand that they drop their arms could have meant that and nothing else. It is true that no witness swore in so many words that there was a conspiracy between appellant and his brothers to kill the prohibition officer, Cleveland, if he should come to arrest them, but we think there were ample facts and circumstances proven to go to the jury on the question of conspiracy. The evidence was sufficient to go to the jury on the question whether or not appellant was interested in the still, and therefore guilty of a felony in its ownership and operation, and whether they had armed themselves for the purpose of resisting arrest to the death, if necessary, for such felony.

A conspiracy rarely can be shown by direct evidence. Oftentimes it can only be shown by many facts and circumstances taken and considered together, any one of

which would be wholly insufficient to establish a conspiracy.

The court gave instructions for the state substantially to the effect that appellant was denied the right of self-defense if the evidence showed he was a felon and armed himself to resist arrest therefor, even though the evidence showed that Cleveland, the deceased, fired the first shot, provided it appeared from the evidence it was necessary for Cleveland to so fire in order to prevent the latter from escaping arrest. The giving of those instructions is assigned as error by appellant. We are of the opinion that they were proper under the particular facts of this case. The principle involved is well illustrated in *Tolbert* v. *State,* 71 Miss. 179, 14 So. 462, 42 Am. St. Rep. 454. Tolbert was an escaped convict; he was armed to resist arrest, and so was his brother, who was with him; they encountered persons whom they had reason to believe were in pursuit to arrest Tolbert, the convict. He and his brother immediately prepared to use their arms and shortly began firing. Numerous shots were exchanged. One of the arresting posse was killed by Tolbert, the convict, or his brother. The court held that both of the Tolberts were guilty of murder, although the evidence did not make it certain that they began the firing, and though the posse, being partially concealed, and, being called upon to say who they were, refused to make any response, and did not declare their purpose to arrest. The court said that the very presence of the defendants, armed and ready to resist arrest, was an overt act apparently threatening, justifying killing them on the slightest indication of a purpose to use their weapons; that, therefore, it was not important who fired the first shot.

Appellant assigns as error the action of the court in permitting evidence on the part of the state showing the existence of the still, the fact that appellant was present thereat, and other facts knowledge of which was gotten by Sheriff Cannady alone by virtue of going to the still and finding appellant and his brothers there. There was

no search warrant, and, therefore, appellant argues that all those facts so gotten and testified to by the sheriff, under the Tucker case and other cases following that case, should have been ruled out as incompetent. Those cases have no application to the facts here. The still had been located by the prohibition officer, Cleveland. He and the sheriff were not searching for the still; they knew where it was. The possession of the still constituted a felony; its operation constituted another felony on the part of those engaged therein. The sheriff and the prohibition officer, Cleveland, went to destroy the still as it was their duty to do under the statute; and, furthermore, if they went to the place where the still was to arrest those who owned it and operated it, they had a right to do so without a search warrant, because the law is that where the arresting officer knows that a felony has been or is being committed, or has probable ground for believing that a felony has been or is being committed, he has the right to act without either a search warrant or warrant of arrest, and arrest the felon.

The action of the trial court in permitting the state to bring into the courtroom where the appellant was being tried the still and all of its parts, and exhibit it to the jury, is assigned as prejudicial error. We do not think it was. The existence of the still and the description of it was given in evidence by the witnesses. We are unable to see how the presence of the still itself before the jury at the trial could have had any effect except to more plainly exemplify the facts testified to by the witnesses.

The assignment of error based on the action of the court with reference to the juror, Wright, we think, is groundless. The action of the court in holding the investigation as to the truth of McDonald's evidence with reference to the alleged statement of the juror, Wright, was out of the hearing of the jury. We are unable to see how any harm whatever to appellant could have resulted therefrom.

The exclusion of the evidence of the witness Strickland, ruled out by the court, as to threats made by Frank

Ethridge, the county attorney, is assigned as error. Appellant argues that he was thereby prevented from showing excuse for his flight after the homicide. In the first place, we are of the opinion that the alleged threat sought to be proven was too vague and indefinite. There was nothing to show, with any degree of certainty, that it was pointed at appellant; and, second, the alleged threat was against moonshiners. If appellant's evidence is to be taken as true, he did not belong to that class.

The action of the district attorney in offering to prove the bad character of appellant is assigned as error. Appellant argues that, although the court refused to permit such evidence, appellant's character not being in issue, nevertheless the fact that the district attorney offered evidence was prejudicial to him. There was no harm shown to have been done appellant by that action of the district attorney. And we are unable to see how it was calculated to harm appellant.

The action of the trial court in permitting the witnesses Chapman and Shannon to testify as to statements made to them in jail by Ebb Pickett, a brother of appellant, is assigned as error. Ebb Pickett was present at the still when the homicide took place, and the state's evidence tended to show that he, with appellant, murdered the deceased, Cleveland; he acting either directly or by aiding and abetting as a co-conspirator. These statements by Ebb Pickett were not admitted as original evidence. He testified for appellant as to the facts of the homicide. His testimony tended to exonerate appellant. On cross-examination he was asked as to certain statements made by him to Chapman and Shannon which conflicted with his evidence on the witness stand, which he denied. Chapman and Shannon were then put on the witness stand to contradict him. If the action of the court in that respect was erroneous, it was not harmful error. It could not have materially influenced the jury.

The action of the court in permitting the county attorney, Frank Ethridge, to testify that, before the homicide, Ebb Pickett made a statement to him threatening

the life of the deceased, Cleveland, was not error. There was ample evidence of facts and circumstances going to show that there was an understanding between appellant and his brothers that they would kill Cleveland, the prohibition officer, if he attempted to arrest them for violating the prohibition laws; and that when Ebb Pickett made that statement to Ethridge he meant that he and his brothers, including appellant, if necessary to avoid arrest and prosecution for their unlawful acts, would kill Cleveland, the prohibition officer. We are of the opinion that there is no merit in this assignment of error.

We are unable to see any harmful error in the action of the court in permitting the district attorney in his closing argument, to point out in the presence of the jury the still at which the homicide took place, which was present in court. Futhermore, there does not appear in the record any objection made by appellant to the argument of the district attorney in that respect, nor any special bill of exceptions embodying the language of the district attorney and objection thereto, and the ruling of the court on such objection.

What we have said about having the still in the presence of the jury applies with equal force to the action of the court in permitting the jury to examine the automobile which appellant had when he was arrested.

After a very thorough examination and consideration of the instructions requested by appellant and refused by the court, and the instructions given on behalf of the state and the argument by appellant as to the correctness of the instructions requested by him and refused by the court, as well as the alleged errors in the given instructions for the state, we are of opinion that, although the court probably erred in the giving and refusing of some of the instructions, such errors were without harm to appellant.

Instructions given on behalf of both the state and appellant were numerous and full; they covered every phase of the case; especially every avenue of escape from

guilt by appellant was covered by one or more proper instructions given either for the state or the appellant.

Looking at the completed history of the trial, we are of opinion that appellant was denied no substantial right, and that the evidence was ample to justify his conviction by the jury.

*Affirmed.*