MAPP *v.* STATE.*

(Division A. Jan. 14, 1929. Suggestion of Error Overruled Feb. 11, 1929.)

[120 So. 170. No. 27534.]

*Corpus Juris-Cyc References: Arrest, 5 CJ, section 30, p. 399, n. 78; Criminal Law, 16CJ, section 1110, p. 571, n. 93; On the general rule as to power of officer to arrest one believed to have committed felony without warrant, see 2 R. C. L. 446; 1 R. C. L. Supp. 541; 4 R. C. L. Supp. 111 ; 5 R. C. L. Supp. 97; 6 R. C. L. Supp. 94; 7 R. C. L. Supp. 45.

*Percy M. Lee,* for appellant.

*Rufus Creekmore,* Assistant Attorney-General, for the state.

Argued orally by *Percy M. Lee,* for appellant, and *Rufus Creekmore,* Assistant Attorney-General, for the state.

McGowen, J. Mapp, the appellant, was indicted by the grand jury and tried by the circuit court of Leake county on the charge of manufacturing intoxicating liquor. Upon the trial on this charge, he was convicted by the jury of an attempt to manufacture intoxicating liquor, and the court sentenced him to serve a term of one year in the state penitentiary. From that conviction and judgment of the court, he appeals to this court.

This is the second appearance of this case in this court. On the former appeal, the case was reversed and remanded, and is found reported as *Mapp* v. *State* (No. 26602), 148 Miss. 739, 114 So. 825.

The facts in this case are undisputed, and the essential facts on which this opinion is based are as follows: J. G. Clay, a constable of beat 4, Leake county, had information that a still would be operated and a run of whisky made on the night of December 23, 1926, near the line of Leake and Scott counties. Lyell, a constable of Scott county, gave the officer of Leake county this information, that liquor would be made on the Majors place which extended into Scott county. Lyell told the officer of Leake county that a Mr. Mundy had given him the information that a run of whisky was about to be made. Mundy was a private citizen, and the Leake county officer said he was a man of good reputation, whom he regarded as a credible witness. The two constables met Mundy, the informant, and Bennett, on the Majors place, about one-half mile from the place where they later found the still in operation. Mundy described the spot where he had located a barrel of mash ready to run, stating that there was a hole dug in the ground and a barrel sunk therein at a certain designated place. The three then left the Whitetown and Ludlow road, and a short distance from the

road they saw the reflection of a light in the woods, and, as they went over the hill, they saw the blaze of the fire under the still. They secreted themselves and saw Will Johnson and Attley Mapp in the act of replenishing the fire under the still and otherwise conducting the operation of making whisky. Will Johnson walked out close to Clay; the two men having had an argument about who should get the next wood. Before Johnson left the still he was arrested, and, when Mapp undertook to run, he was also arrested. The still was fully assembled. The tank was full of beer, the coil and pipe were in full operation, and the beer was beginning to steam, though no manufactured whisky had yet run into the receptacle intended for it. This beer was buried near a little branch that ran east through there where there had been a horse stand. There were fifty gallons of beer in the barrel sunken in the ground when Mundy discovered it the night before the officers found this defendant attempting to make whisky and arrested him.

The witness Mundy said he had had experience and smelled the beer; that it was in a state of fermentation and ready to run. His opinion was that it could not have waited any longer.

The witnesses for the state were all agreed that the still was "fired up," and that the appellant and his companion were engaged in the act of manufacturing whisky, though they had not proceeded far enough for any whisky to have actually run through the pipes.

The land on which the still was located was leased by the owner to Mapp. It was in the woods, not connected with his house, yard, or curtilage thereof. The officers did not procure a search warrant, but made the search on what they saw at a considerable distance from the scene, and on the information which Mundy gave them.

The only evidence offered by the defendant was to the effect that he was in possession of the land, as tenant, at the place where the officers saw the felony being com-

mitted, and they had information that a felony was in process of being committed.

The only point made here is that the evidence in this case was obtained unlawfully because the officers and a private citizen on defendant's premises seized a still and arrested him without first having obtained a search warrant as required by section 23 of the state Constitution.

Under the facts in this case, we think the officers acted upon the credible information that a felony was in process of being committed and would be shortly committed. A barrel of beer, sunk in the ground and ready to run, disconnected from any private premises, a considerable distance from defendant's house, in the woods, would suggest to any logical mind that the mash was being prepared and fermented with which to complete the crime of manufacturing whisky. At any rate, any sensible man would conclude that a felony was about to be committed at this particular place. The officers, on this information from Mundy, had reason to believe that a crime would ensue within a limited time, and had the right to arrest the man who was in the act of committing the felony. The eye commits no trespass. It was their duty to arrest this defendant out in the open woods, and, having the right to arrest him in the commission of a felony, they could not see the crime being committed, without seeing the attendant circumstances, and we think this case is fully disposed of and settled by the cases of *Kennedy* v. *State,* 139 Miss. 579, 104 So. 449, *Pickett* v. *State,* 139 Miss. 529, 104 So. 358, and *Love* v. *State,* 142 Miss. 602, 107 So. 667. In the Kennedy case, the officers without a warrant, had information that a still was in a certain place. They went the following day upon the place and found the defendant operating a still. This court held that the evidence so obtained by the officers making the arrest without a search warrant was admissible. Among other things, at page 450 of 104 So. (139 Miss. 586), the court there said: "It seems that an officer

also has authority to take steps to prevent the commission of a felony by arresting a person when he has reasonable ground to believe that the latter is about to commit a felony."

Counsel argues that the possession of the beer only tended to show that the defendant, or some one, was committing a misdemeanor by having intoxicating liquor in his possession, because this beer was shown to be intoxicating. We do not think so. We think that the finding of the beer, with all the attendant circumstances, indicated to any reasonable mind that the process of making whisky had been begun and that the officers were warranted, upon this information, to take steps to prevent the completion of a felony.

Some human hand had stirred the ingredients which made up the mash in the barrel, and, while a human hand could not bring about the fermentation, some human hands directed by a human brain had put the ingredients in such position as to produce fermentation, which steps must be taken before the manufacture of intoxicating liquor can be completed, just as ingredients must be placed in a bomb which will produce explosion and the attendant injuries. Some hand must fix the spring which will cause the bomb to explode, etc. When an officer knows that a bomb has been placed in position to be dangerous to society, it is his duty to arrest the felon before he can complete the heinous crime. The barrel in the instant case did not sink itself in the ground. The several ingredients necessary to make the mash did not assemble themselves together. Some one carried the barrel to the place on the banks of the brook, dug the hole, placed the ingredients therein, and thereafter, at the time when it was ripe for fermentation, stirred the fire under it, put fuel underneath the boiling caldron with which to make the brew which is denounced by the laws of this state and by the laws of the nation as well. He is caught in the act, and section 23 of the Constitution cannot avail to relieve him of his crime.

*Affirmed.*