199 So.2d 635 (1967)
Durwood MAY
v.
STATE of Mississippi.
No. 44433.
Supreme Court of Mississippi.
June 5, 1967.
*637 Walker & Sullivan, Mendenhall, for appellant.
Joe T. Patterson, Atty. Gen., by R. Hugo Newcomb, Sr., Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Justice:
Durwood May, appellant, was indicted, tried, convicted and sentenced to life imprisonment in the Circuit Court of Simpson County, Mississippi, on a charge of having murdered his wife, Daisy Ann May. He appealed to this Court, and has presented several serious assignments of error. We have concluded that the case must be reversed for a new trial; therefore, we discuss only the facts essential to the explanation of the points of error on which this opinion is based.
Durwood and Daisy Ann May had been married for almost nineteen years at the time of the tragedy in the death of Daisy Ann May. Six children, ranging in age from five to seventeen years had been born to this union. On the night of July 3, 1966, the appellant, Durwood May, his wife and four of their children, spent the night at the home of the sister of Daisy Ann May near Brandon, Mississippi. The next afternoon they drove to Jackson to get their daughter, Kay May, but it developed that Kay wanted to go to the Coast with some friends. Mr. and Mrs. May permitted Kay to go with her friends rather than return with them to their home. They then drove to their home. It had been raining, and when Mrs. May got home, she began to sweep the carport. Mr. May went into his bedroom and obtained a target pistol. He went out on the carport where his wife was sweeping, and there, it is said, he threatened his wife with a pistol. She went into the house and he followed her. While the children were engaged in cooking and looking at television, the gun in his hands went off, and Mrs. May was struck with a bullet. She fell out of the front door. Mr. May and one of their sons ran to her and put her on the couch. An effort was made to call a medical doctor by telephone. When they were unable to reach the doctor, Mr. May and one of his sons put Mrs. May into an automobile and took her to the hospital. Dr. Charles Pruitt was at the hospital, and he examined Mrs. May and determined that she was dead. Constable C.B. Barnard was notified and he took appellant to the jail in Magee. Later, the Sheriff, Howard M. Varner, and Lloyd Jones, Highway Patrolman, took appellant from the Magee jail to the Simpson County Jail at Mendenhall, Mississippi.
The Sheriff and Highway Patrolman then went to the home of appellant's father, John May, and talked to the children of appellant. George Henry May, fifteen year old son of appellant, went with the officers to appellant's home, and unlocked the front door. The officers entered appellant's home and made an examination of the scene where the homicide is said to have occurred. George Henry May went into his father's bedroom and found his pistol under the mattress of the bed, and showed it to the officers. They took pictures of the pistol by lifting the mattress and pointing at it. They held strings and tapes from the place where appellant was said to have been standing at the time the gun was fired, and took pictures of the officers holding the tape. They took pictures outside of the house where Mrs. May fell after the shot was fired.
One of the officers drew a diagram of the house, showing the various rooms and their measurements. He also wrote on the map or plat information given him by others. For example: "Daisy Ann May fell here."
*638 In the meantime, an investigator of the Highway Patrol went to the funeral home and made two colored pictures of the nude body of deceased above the waist. One of these pictures has a probe pointing at a bullet hole indicating the direction of the path of the bullet.
During the trial, attorney for appellant objected to the introduction of the pictures taken in his home upon the ground that these pictures and the pistol found under the mattress were obtained by an unlawful search of the home inasmuch as the officers acted without the consent of appellant and without a search warrant. The trial court overruled this objection and the photographs and pistol were introduced in evidence and given to the jury. We hold that this action on the part of the court was reversible error.
Mississippi Code 1942 Annotated section 2470 (1956) provides that it is the duty of an officer to make arrest of a person when such person has committed an indictable offense or a breach of the peace is threatened in his presence; or when a person has committed a felony, though not in his presence; or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested has committed it.
Moreover, Mississippi Code 1942 Annotated section 2471 (1956) provides that an officer may break into a dwelling house where he has reason to believe the offender may be found.
When an officer is required to go into a dwelling house or a place for the purpose of making an arrest, he may observe the surrounding scene of the alleged crime, and make a search of the person arrested and the surroundings, and in so doing, he may take pictures of the area, and may seize evidence of the crime, including weapons, and articles that may be employed by the offender to make an escape. Hughes v. State, 196 Miss. 282, 17 So.2d 444 (1944); Pickett v. State, 139 Miss. 529, 104 So. 358 (1925).
The right of an officer to search a prisoner incident to a lawful arrest involves a different legal principle than that prohibited by the search and seizure clauses of the State and Federal Constitutions. The search of a prisoner and the surrounding area where the prisoner is apprehended is not only necessary in order to discover weapons with which the prisoner may escape, but it is also the duty of the officer to make an investigation of the crime for which the prisoner is apprehended, and take into his possession evidence that may be used in the prosecution of the defendant. Harris v. State, 216 Miss. 895, 63 So.2d 396 (1953); Millette v. State, 167 Miss. 172, 148 So.2d 788 (1933); Bird v. State, 154 Miss. 493, 122 So. 539 (1929); Mapp v. State, 152 Miss. 298, 120 So. 170 (1929); Thompson v. State, 153 Miss. 593, 121 So. 275 (1929); Pickett v. State, 139 Miss. 529, 104 So. 358 (1925); 4 Am.Jur. Arrest § 68 (1936); Annot. 82 A.L.R. 782, 784 (1933); Annot. 74 A.L.R. 1387, 1398 (1931); Annot. 51 A.L.R. 424, 431 (1927); Annot. 32 A.L.R. 680, 681 (1924).
On the other hand, an officer cannot enter a home of one charged with crime after defendant has been arrested and incarcerated in jail without his consent and without a valid search warrant.
In the case of Page v. State, 208 Miss. 347, 44 So.2d 459 (1950), we pointed out that the sheriff could take evidence of crime at the time that he went upon the property of defendant to make an arrest, but that after defendant had been arrested and put in jail, the officer could not return to the home of defendant and make a search without his consent and without a lawful search warrant.
In Lancaster v. State, 188 Miss. 374, 195 So. 320 (1940), the officer returned to the home of defendant the next day, after having incarcerated defendant in jail, and searched for an axe. The officer had a *639 search warrant but it was void, and this Court held that the officer could not testify with reference to the search. We also held that a neighbor, who saw the officer make the search, could not testify to facts uncovered by the unlawful search. This case clearly points out that a search of the defendant's home the next day after he was incarcerated is not an incident to the arrest.
In the case of Martin v. State, 217 Miss. 506, 509, 510, 64 So.2d 629, 630 (1953), we said:
"The appellant assigns as error that the court erred in admitting, over the objection of the appellant, the testimony of the sheriff relating to the five empty shells found upon the premises of the appellant and their introduction in evidence on the grounds that the sheriff was unlawfully on the premises because he did not have a search warrant. We are of the opinion that this assignment is well taken. * * The sheriff had no authority to go upon the premises of appellant while he was in jail without a search warrant."
In the case of Joyce v. State, 227 Miss. 854, 860, 861, 87 So.2d 92, 93, 94 (1956), we said:
"It was error to permit Sheriff McClellan and Bahin to testify concerning the facts they learned as a result of their illegal entry upon the defendant's property without a search warrant. They could testify as to what they saw with their eyes from the public road passing by the defendant's house. That would not constitute an unreasonable search. * * * However, they entered defendant's property and searched it without a search warrant, and evidence obtained as a result of such illegal search was wholly inadmissible.
"This conclusion applies also to the photographs taken of the pickup truck on defendant's property. Compare Martin v. State, 1953, 217 Miss. 506, 511-513, 64 So.2d 629. The photographs were taken after appellant had been arrested, and without a search warrant. Apparently appellant was in jail at the time. At any rate, the second entry made upon appellant's property without a search warrant, which apparently was for the purpose of taking the photographs, was also an illegal entry and search. The photographs should have been excluded by the trial court."
In Jones v. State, 170 Miss. 581, 586, 155 So. 430, 431 (1934), this Court said:
"The appellant was in his home, and no person or officer had a right to enter except in strict accordance with the law. No matter how humble, a man's home is his castle, and no one can enter without his consent, except in strict accordance with the law. An English statesman said that, though a home be poor, no officer can enter; that the wind and the rain may enter, but a King could not, except in strict accordance with the law."
We hold that the officers had no right to go upon the property of the defendant in the instant case without his consent and without a lawful search warrant, after the defendant had been taken to jail, and seize his property and make photographs of the interior of his home. The testimony was inadmissible.
The State argues, however, that the officers did not make a search, that the son of appellant unlocked the house and showed the officers the gun. This argument, however, is not well founded. We have pointed out in the case of Henry v. State, 253 Miss. 263, 154 So.2d at 289 (1963), that a wife could not waive the constitutional right of a husband to object to an illegal search. In the case of Martin v. State, supra, we held that the brother-in-law could not grant permission to officers to go upon property of defendant without his consent. We are of the opinion, and so hold, that a son could not waive the right of the father to object to an illegal entry and search of his home.
*640 The attorneys for the defendant strenuously objected to the introduction into evidence of colored pictures of the nude body of the deceased upon three grounds: (1) Exhibiting the two pictures to the jury served no purpose except to inflame and prejudice the jury against the defendant; (2) there was no need for such testimony since there was other testimony available showing the path and force of the bullets to the body of deceased; and (3) the pictures were indecent.
As a general rule, the fact that a photograph of deceased in a homicide case might arouse the emotions of jurors does not of itself render it incompetent in evidence so long as introduction of the photograph serves some legitimate, evidentiary purpose. Slyter v. State, 246 Miss. 402, 149 So.2d 489, 150 So.2d 528 (1963); Stokes v. State, 240 Miss. 453, 128 So.2d 341 (1961); Price v. State, 54 So.2d 667 (Miss. 1951); Hancock v. State, 209 Miss. 523, 47 So.2d 833 (1950).
On the other hand, the introduction of gruesome photographs which have no useful evidentiary purpose, and which only arouse the passion and prejudice of the jury, should not be permitted to go to the jury. It is within the sound discretion of the trial judge to determine whether or not the photographs have a legitimate, evidentiary purpose. Martin v. State, 217 Miss. 506, 64 So.2d 629 (1953); Coleman v. State, 218 Miss. 246, 67 So.2d 304 (1953); 20 Am. Jur. Evidence §§ 728, 729, 730 (1939); 23 C.J.S. Criminal Law § 852(1) c., at p. 352 (1961); Annot. 159 A.L.R. 1413 (1945).
One of the exhibits to the testimony of Patrolman Rex Armstead (No. 16) was a photograph showing a probe pointing to a bullet hole in the nude body of the deceased. This arrangement of objects in the photograph was for the purpose of indicating the path of the bullet as it passed through the body of the deceased. This arrangement of the probe in the photograph is of course evidence of the person making the arrangement, and is an effort to get the photograph to testify as evidence in its own right. Such a scene or arrangement of persons or objects is known as a "tableau vivant", and this Court has held that pictorial tableaus are not admissible in evidence. Buie v. State, 217 Miss. 695, 64 So.2d 897 (1953); Fore v. State, 75 Miss. 727, 23 So. 710 (1898). This does not mean that a witness cannot point to places and things shown on a true photograph, and mark them, if necessary, so as to make the testimony of the witness clearer to the jury. Sims v. State, 209 Miss. 545, 47 So.2d 849 (1950). It does mean, however, that a photographer cannot set up a scene, as pointed out by others, and photograph such an arrangement so as to indicate evidence drawn from deductions and conclusions of others.
Exhibit Number 18 (the other nude picture of the deceased) presents a question for the trial judge to be determined when it is offered, under the facts presented to the court, upon retrial of this case. We express no opinion as to its admission at this time, because at the time it was offered in evidence in the trial, the only evidence then known to the court was the statement of the defendant that he did not shoot his wife. It was then competent to show that she was shot.
It is next contended by the appellant that the trial judge committed reversible error in permitting the prosecuting attorney to cross-examine him with reference to two previous occasions when it was said he had assaulted his wife. The appellant was questioned about an occasion two or three months previously when he had given his wife a "black eye." He admitted this incident, but attempted to explain that since that time he and his wife had settled and adjusted their difficulties and had visited their pastor. He was not permitted to go into detail as to how they had adjusted their disagreement. The appellant contends that his objection to the cross-examination should have been sustained because (1) the *641 alleged assault was a separate offense, not related to the crime for which he was being tried; (2) in point of time, the incident was too remote to be of evidentiary value; and (3) that it was harmful and prejudicial since he was not permitted to explain in detail how the difficulty was adjusted.
The general rule on the admissibility of evidence of former difficulties is set out in the case of Herman v. State, 75 Miss. 340, 345, 22 So. 873 (1898). In that case, this Court said:
"The general rule is that, on the trial of one charged with a particular crime, the evidence must be confined to the issue joined as to that specific offense, and that, usually, evidence showing, or tending to show, the accused's guilt of another offense, at some prior time, is incompetent. This rule is founded in reason, for to allow the introduction of evidence of other and distinct offenses would confuse and mislead the jury as to the real issue to be determined, would prejudice the prisoner by irrelevant matter, and require him to meet charges foreign to the specific offense laid to his charge. This rule, however, is not without exceptions, and one of the excepted classes is where the evidence of a former, distinct offense is offered to show intent or motive in the commission of the crime charged."
The Court also held that the incident of a former assault was inadmissible in evidence, and pointed out that since it had occurred more than twelve months previous in point of time, it was too remote.
In the case of Raines v. State, 81 Miss. 489, 498, 33 So. 19, 21 (1902), the testimony was entirely circumstantial. The defendant contended that the killing of his wife was an accident. There were witnesses who testified that the defendant had "treated his wife rough", that he had whipped her and caused a miscarriage. There were other acts of violence and threats shown, but the Court said:
"We are of the opinion that the instances contained in the record of the cursings of the deceased by the defendant, whether taken collectively or singly, were incompetent as evidence against the defendant, and were harmful and illegal. We further think that the many simple assaults of the deceased by the defendant, whether collectively or separately considered, were incompetent as evidence against the defendant, and were hurtful and injurious to his side of the question then under investigation by the jury * * *."
See also: Spears v. State, 253 Miss. 108, 175 So.2d 158 (1965); Hawkins v. State, 224 Miss. 309, 80 So.2d 1 (1955); Myers v. State, 167 Miss. 76, 147 So. 308 (1933); Rich v. State, 124 Miss. 272, 86 So. 770 (1921); 20 Am.Jur. Evidence § 309 (1939).
We are of the opinion that the former difficulty between the appellant and his wife, when it was said that the defendant gave his wife a black eye, should not have been admitted in evidence under the facts in this case. Moreover, after the appellant was questioned about the former difficulty, he should have been permitted to show that there had been an amicable adjustment of their differences anterior to the killing. Wood v. State, 165 Miss. 363, 144 So. 545 (1932); Petty v. State, 83 Miss. 260, 35 So. 213 (1903).
The defendant was also questioned on cross-examination about an incident which occurred five or six months prior to the trial when it was said he shot at his wife and younger child at a time when they were driving away from his home in an automobile. He denied this incident. Rita June May testified on rebuttal that her father shot at her mother and younger sister as they left their house; that her father fired at them out of the window with a pistol. We think this testimony is admissible. It is an exception to the general rule and shows intent in the commission of the crime charged. Defendant, appellant here, contends that the shot that killed his wife *642 was accidental. The testimony of Rita June May indicates that appellant had intentionally fired a pistol at his wife at another time. We hold this testimony to be competent.
The final assignment of error which we deem necessary to discuss is the contention of appellant that he should be acquitted for the reason that his testimony as to the homicide was uncontradicted. He cited the rule set out in Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933) as authority for the proposition that he was entitled to have his version of the death of his wife Daisy Ann May taken as true.
The Weathersby rule, as set forth in Seals v. State, 208 Miss. 236, 239, 240, 44 So.2d 61, 63 (1950), is as follows:
"It has been for some time the established rule in this state that where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge."
The argument that the Weathersby rule is applicable here overlooks the evidence that immediately before the fatal shot was fired, the defendant threatened his wife and told her that he ought to use the pistol on her. We are of the opinion that there is sufficient evidence in the record from which reasonable jurors could determine that the version of the homicide given by the defendant was not true. The issue as to whether or not the appellant intentionally killed his wife was a question for the jury. We reverse and remand this case for a new trial in accordance with the foregoing opinion.
Reversed and remanded.
ETHRIDGE, C.J., and JONES, BRADY and INZER, JJ., concur.