## JOYCE *v.* STATE

No. 40100 May 7, 1956 87 So. 2d 92

*John B. Gee,* Vicksburg, for appellant.

*John H. Price, Jr.*, Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

Appellant Barge Joyce was convicted in the Circuit Court of Sharkey County of grand larceny, for the theft of one sow and five pigs. The case will have to be reversed and remanded for errors in the admission of certain evidence.

Joyce and his family lived in a house on his mother's farm in Sharkey County. He worked on the place and on the side bought cattle and hogs to resell and picked cotton for others. George T. Houston of Memphis and his sister owned a large plantation in Sharkey County. They operated it as a partnership known as the Forestair Estate. Apparently Houston spent a good deal of time supervising the work on the plantation. On his place was a house occupied by a colored tenant named Robert Brown. Brown was Houston's employee, and he looked after the livestock which were kept there, including the sow and five pigs which were stolen. This livestock was at the place on Friday, July 2, 1955. On the next Tuesday, July 6, Houston returned to the place, and the sow and pigs were missing along with two rolls of wire and a saw. Robert Brown had also left and was not found. Houston reported the theft to Sheriff

F. C. McClellan. He called in Charles Bahin, an investigator for the Mississippi Live Theft Bureau, to assist him in the investigation. When the two officers went to Houston's plantation they observed a corral near Brown's house, and saw that a vehicle had been backed up to the cattle chute. The sheriff testified that it was apparent from the signs in the chute that the sow and pigs had been loaded from it, and that the vehicle which had been backed up to the cattle chute had a tractor tire on the right front, a ground grip tire on the left rear, and the other two tires were ordinary treads.

The sheriff and Bahin, and a Mr. Wells, a highway patrolman, then began looking around in that part of the county for a vehicle which had tires of a similar type. During the search the officers drove up in front of Joyce's house. Bahin and McClellan both testified that pigs were in the road in front of the defendant's house, and that they fitted the general color descriptions of the missing livestock. The public road ran by the north and west sides of the defendant's house, and from the public road they could see about 50 feet away on defendant's property a pickup truck with tractor and ground grip tires on it. The officers asked defendant's children where their father was, and were told he was out in the field. They had no search warrant. They entered upon his premises and looked at the truck with the tires on it. They also observed that on the bumper of the truck there was a "bunch of white stuff". The sheriff said that the loading chute on Houston's place had been freshly whitewashed. The sheriff went in the field and arrested Joyce. Joyce pointed out to them two rolls of wire, a posthole digger, a cross-cut saw and a hand saw, which Houston had reported as being missing.

Joyce told the officers, and on the trial he testified, that for the past year he had been in the business of buying cattle and hogs; that shortly after dark on Sun-

day night, July 4, a Negro man whom he did not know drove up to his place on a truck and told him that he was moving away from the place on which he was working, and wanted to sell the sow and pigs, and the other things; and that he bought them for $21.00. Joyce did not know the seller's name or where he worked, but he attempted to give a description of him. His wife and a son and daughter corroborated his version of the manner in which he obtained the sow and pigs.

Sheriff McClellan was permitted to testify that the tires on the truck found in Joyce's yard "were all the same tires that would have made the same tracks at the corrall." The officers took the sow and pigs and returned them to Houston.

Charles Bahin, investigator for the Livestock Theft Bureau, testified that he made the initial search with Sheriff McClellan. They did not have a search warrant. He said that the tires on the truck at Joyce's place were of the same type as those of the truck which had backed up to the corral; that on the rear bumper he found particles of whitwash; and that Joyce admitted the truck was his. (Joyce said this Chevrolet pickup truck belonged to his son.) At any rate, apparently the defendant used it. It was situated on the premises of the house in which he and his family lived. The record is not clear as to the time, but apparently several days after Joyce's arrest, Bahin and the sheriff went back on Joyce's property and took several photographs of the tires and bumper of the pickup truck. Three of these photographs were admitted into evidence over proper objections by defendant's counsel. At the time the pictures were taken on defendant's property the officers had no search warrant to enter the premises.

■■ ■ It was error to permit Sheriff McClellan and Bahin to testify concerning the facts they learned as a result of their illegal entry upon the defendant's property without a search warrant. They could testify as

to what they saw with their eyes from the public road passing by the defendant's house. That would not constitute an unreasonable search. Daniels v. City of Gulfport, 146 Miss. 517, 112 So. 686 (1927); Goodman v. State, 158 Miss. 269, 130 So. 285 (1930); 79 C. J. S., Searches and Seizures, Secs. 31, 66. However, they entered defendant's property and searched it without a search warrant, and evidence obtained as a result of such illegal search was wholly inadmissible.

 This conclusion applies also to the photographs taken of the pickup truck on defendant's property. Compare Martin v. State, 217 Miss. 506, 511-513, 64 So. 2d 629 (1953). The photographs were taken after appellant had been arrested, and without a search warrant. Apparently appellant was in jail at that time. At any rate, the second entry made upon appellant's property without a search warrant, which apparently was for the purpose of taking the photographs, was also an illegal entry and search. The photographs should have been excluded by the trial court. To the same effect are Cofer v. State, 152 Miss. 761, 118 So. 613 (1928), and Lancaster v. State, 188 Miss. 374, 195 So. 320 (1940). In the Lancaster case, defendant was arrested and on the next day the officers made a search with a defective search warrant, at which time they found in a well the axe allegedly used in the murder. The evidence so obtained was held to be not admissible in evidence. Williams v. State, 216 Miss. 158, 61 So. 2d 793 (1953), is distinguishable, because there the right of officers to seize recognized stolen property as contraband was based upon the pre-requisite that the officers must first have a search warrant for some lawful purpose. Here the officers had no authority at law to enter appellant's premises. They had no search warrant, and the search was not incident to any precedent arrest of appellant. He was arrested after they had gone upon his land and inspected the truck.

▮▮ It was also error to permit the sheriff to testify that in his opinion the tires on the pickup truck were the "same tires that would have made the same tracks. at the corral". Bahin's testimony was more restricted in this respect. In Johns v. State, 130 Miss. 803, 95 So. 84 (1922), it was held to be reversible error to permit the witness to state that the automobile of the defendant was the one that made the tracks near the scene of the robbery. He should have described in detail the tracks, and it was a question then for the jury to decide whether or not the car in question made the tracks described by the witness. Johns v. State was followed in Payne v. State, 181 So. 715 (Miss. 1938), although it was there said that the testimony under the facts in that case did not constitute reversible error. The decision in Johns v. State is applicable here. We find no merit in any of the other assignments of error. The cross-examination of Bahin with reference to the disappearance of Robert Brown was properly limited to the fact of his disappearance. This cause is reversed and remanded for a new trial.

Reversed and remanded.

*Roberds, P.J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.