205 So.2d 286 (1967)
Willie Mae POLLARD and Billie Mae Barberson
v.
STATE of Mississippi.
No. 44572.
Supreme Court of Mississippi.
December 20, 1967.
R. Jess Brown, Jackson, for appellants.
Joe T. Patterson, Atty. Gen., by R. Hugo Newcomb, Sr., Asst. Atty. Gen., Jackson, for appellee.
BRADY, Justice:
This is an appeal from the Circuit Court of Clay County, Mississippi, wherein appellants were tried and convicted of grand larceny and sentenced to four years in the state penitentiary.
In December, 1965, two or more law enforcement officers from the sheriff's office went to the home of appellants, served on them what purported to be a search warrant, and thereafter searched the house and surrounding premises where appellants resided, in an effort to find beer or whiskey. Neither whiskey nor beer was found on the premises and neither appellant was taken into custody. Shortly thereafter on the *287 same day appellants were seen on Highway 50 east riding in an automobile driven by George Cannon. They were returning from a place known as the Quick Trip in Lowndes County. Mr. Raymond McClure, Deputy Sheriff of Clay County, and Mr. Jesse Smith, Constable of District 2, were patrolling Highway 50 east and were following the car in which appellants were riding. Mr. McClure testified that he noticed that the car was "bobbing a little bit down the road so we stopped the car and got the driver out." The driver readily agreed that the officers could search the car and the officers saw in a sack some beer which had been procured from the Quick Trip. The appellants were thereupon arrested and placed in the county jail at West Point. It is irrelevant and unnecessary for us to determine whether or not probable cause for the arrest existed.
The record discloses, as shown by Sheriff Joe Strickland's testimony, that after being incarcerated in the jail appellants asked to be permitted to make bond and were assured they could do so provided it was a cash bond. However, appellants were unable to make a cash bond. They stated that the reason they wanted to make bond was because they had livestock on their premises which would have to be taken care of and watered. Sheriff Strickland stated that he could not permit appellants to be released from the jail but explained that he and his men would "see that the livestock didn't suffer. We would either take care of them ourselves or get someone, so they asked at that time that we see that the calves and livestock get water down there."
Sheriff Strickland further testified as follows:
So McClure and Smith voluntarily agreed to go down and see that the calves and so forth was properly watered, or had water, which they said well that would be all right, they would appreciate you doing that, so they went down and in the course of going to the barn or through the barn they came across this group of pigs, small pigs that was in the pen there with, adjoining or adjacent to some larger pigs, so they came back immediately and I was out at the time when they got back but they called me and I came back around to the jail or to the court house here and told me that they believed they had located the pigs that I had described to them, or I had described to McClure as stolen pigs, so I said, "Well, we will go by and pick up Mr. Stewart and go on down there and tell him and see if he can identify the pigs."
The record discloses that on Wednesday, December 8, 1965, Mr. Grover C. Stewart discovered that five pigs around six years old were missing from his place, and reported this fact to the sheriff. On the following Saturday, December 11, Sheriff Strickland with several others drove to Mr. Stewart's and asked him to get in the car and go with them to see if he could identify his pigs. All drove to the premises occupied by the appellants, and, after entering thereon, Mr. Stewart identified the pigs found there as his. The pigs were sacked up and taken back to Mr. Stewart's property.
Numerous assignments of error are urged, but the disposition of this case does not require our detailed consideration thereof. We address ourselves to two fundamental errors which are sufficient to require our consideration. At the outset, the testimony offered with reference to the original search of the premises and the arrest for the possession of beer is immaterial insofar as the merits of this case are concerned. We believe that the trial court granted appellants sufficient time in which to prepare themselves for trial, and sufficient continuances were allowed in order that this might be done. It is unnecessary for us to determine at this time whether or not appellants were advised, as they should have been, that if they were indigent and unable to afford counsel to represent them the state would procure counsel for them. It is also unnecessary for us to decide the other errors which are connected with this basic issue. We do hold, however, that the *288 lower court erred in not permitting appellants to obtain information by the issuance of a subpoena duces tecum to the circuit and chancery clerks relative to the issue of whether or not there had been habitual and systematic exclusion of Negroes from the grand and petit juries of Clay County. Appellants were entitled to review the records of the circuit and chancery clerks as to the jury lists. The records of the chancery clerks and circuit clerks are public documents, and litigants and their attorneys are entitled to inspect the registration books and jury lists under proper conditions such as are present in this case. The information which appellants' attorney was able to secure indicates that there may have been systematic exclusion of Negroes in Clay County from the juries for some time. Appellants' attorney should have been permitted to disclose all the true facts relating thereto in order that the trial court and this Court could pass upon the accuracy or inaccuracy of the charge that Negroes had been and were systematically excluded from the grand and petit juries. Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947); Rabinowitz v. U.S., 366 F.2d 34 (5th Cir.1966); Watts v. State, 196 So.2d 79 (Miss. 1967); Shinall v. State, 187 So.2d 840 (Miss. 1966); Black v. State, 187 So.2d 815 (Miss. 1966); Bass v. State, 254 Miss. 723, 182 So.2d 591, 183 So.2d 483 (1966); Harper v. State, 251 Miss. 699, 171 So.2d 129 (1965).
The second error committed which requires a reversal of this case is that the trial court failed to sustain appellants' motion to strike the testimony of the state's witnesses on the grounds that said testimony resulted from the fruits of an illegal search of appellants' premises while they were being held in custody on charges unrelated to the charge for which they were indicted and convicted. The record expressly reveals, according to the state's evidence, that Deputy Sheriff Raymond McClure and Constable Jesse Smith went upon the premises of appellants with the limited permission of appellants only to take care of and water livestock which they owned. The record shows that at the time these two persons were on the premises with the restricted consent of the appellants Willie Mae had denied that she had any control over the premises and asserted that Billie Mae alone rented and controlled the house. There was no affidavit for search warrant made nor was any search warrant issued or served on either of the appellants at any time with reference to the theft of the pigs in question. Acting upon the alleged request of the appellants that their livestock be watered and without any authority so to do, the two officers in question searched the premises and found the five pigs which were later identified by Mr. Stewart as his own. Upon this information the grand jury indicted appellants for grand larceny.
Conceding that appellants did request the officers to water the livestock and grant them permission to go upon the premises, it does not follow that because thereof the appellants authorized a search of the premises or that the officers had a right to search the premises without the issuance of a search warrant. This evidence should have been excluded upon appellants' motion to strike and the jury should have been directed to disregard the same. Joyce v. State, 227 Miss. 854, 87 So.2d 92 (1956); Martin v. State, 217 Miss. 506, 64 So.2d 629 (1953). It follows, therefore, that the court erred in refusing the appellants' motion for a verdict of acquittal after the state had rested its case.
For these reasons the case is reversed and appellants discharged.
Reversed and appellants discharged.
ETHRIDGE, C.J., and JONES, INZER and ROBERTSON, JJ., concur.