ROBERTSON, Presiding Justice,
for the Court:
McKinley Bell was indicted, tried and convicted in the Circuit Court of Warren County for armed robbery. He was sentenced to serve a term of thirty-five years in the Mississippi State Penitentiary. On appeal, Bell assigns as error:
I. The court erred in allowing the state to present Prentiss Simmons, Jr., a Co-indictee of the appellant, to various witnesses for purposes of identification.
II.The court erred in allowing the state to question one of its witnesses, Willie Mae Brock, regarding her extrajudicial identification of the appellant.
III. The court erred in refusing to grant to the defendant instruction number 4.
IV. The lower court erred in allowing the state to introduce into evidence the fruits of an unlawful search.
About 1:30 p. m. December 3, 1976, two men, each armed with a pistol, entered Trudy’s Dress Shop on Washington Street, in Vicksburg, Mississippi, and robbed its proprietors, Joe and Gertrude Dahlhauser, of approximately $260 in cash. While one of the robbers, Prentiss Simmons, Jr., robbed Mr. and Mrs. Dahlhauser, Bell emptied the cash register. The money taken consisted of a $100 bill, a $50 bill, and other currency and .change.
Viola Tippet, an employee of the dress shop, identified Bell as being one of the two robbers. She testified that when Bell first entered the shop he did not have a mask on, and that she got a good look at him at this time, a sufficient look for her to positively identify him at the trial.
James McGee, who operated a laundromat separated by a narrow alley from the dress shop, drove up and parked his truck facing this alley just in time to see two men run out of the shop and go into the alley. McGee testified that Bell stopped and pulled off a ski mask that he was wearing and looked directly at him and “I looked him right in the face.” At the trial, McGee, *699 without hesitation, identified defendant Bell as being one of the two men that he saw run out of the dress shop, and the one that removed the ski mask from his face as he entered the alley. He even watched the two men as they entered a yellow house close by. McGee drove his truck to the yellow house and just as he got there he saw Simmons come out, get into a taxicab and drive away. Defendant Bell remained in the house. Later, McGee saw the police return with Simmons, go in the yellow house, and later arrest defendant Bell.
Chief A. J. Holliday of the Vicksburg Police Department testified that he stopped the taxicab, arrested Simmons, found a .22-caliber pistol beneath the rear seat where Simmons was sitting, and after taking some currency off of Prentiss Simmons, Holliday and other policemen returned to the McKinley Bell home.
Hattie Mae Bell, McKinley Bell’s mother, was asked if the police could search her home. She readily gave her consent. The home was a shotgun-type house with each room directly behind another. The middle bedroom was occupied by 19-year-old McKinley Bell and his brother, Larry. Captain Baker of the Vicksburg Police Department found $136.70 in a shoe in the middle bedroom. A $100 bill was rolled around other currency. A Spanish-made .38-caliber revolver was found in the garbage can at the back of the Bell residence.
Within an hour after the robbery, Bell and Simmons, along with one other man, were brought back by the dress shop to see if they could be identified. Viola Tippet and Willie Mae Brock, another employee of the dress shop, identified Bell and Simmons as being the two robbers.
McKinley Bell’s defense was an alibi. He denied having anything to do with the robbery and claimed that he was at home listening to the radio and reading. Although he had been unemployed for some months, he claimed that he was saving the $100 bill from money he had earned at Canal Beverage Company, a job that he left in February, 1976. He admitted that he had been convicted of grand larceny in July, 1976.
Hattie Mae Bell testified that McKinley Bell had been at home all day, except for one time when he went to the store for her.
There is no merit in the first assignment of error. Simmons, a co-indictee, was not asked any questions nor did he make any statements at the trial of Bell. He was merely identified by witnesses as being the other robber.
In Kendall v. State, 249 So.2d 657 (Miss.1971), while the victim of the robbery was testifying, William Arbuckle, who was indicted for the same crime but was not being tried, was brought into the courtroom for the purpose of identification by the witness. He was asked no questions and made no statements. We said in Kendall that the privilege against self-incrimination has no application to matters revealed by an open exhibition of the accused’s body or by ordinary observation of his person, and that if the privilege is not available to the defendant for an exhibition of his person, certainly it is not available to the defendant where a co-indictee is being identified by observation of his person.
Defendant next contends that the court erred when it allowed the state to question Willie Mae Brock about her extrajudicial identification of defendant Bell. Bell, along with his co-indictee Simmons, was brought back by Trudy’s Dress Shop within an hour of the robbery to see if they could be identified as the two men who entered and robbed the dress shop. Mrs. Brock positively identified Bell at that time.
Under cross-examination at the trial, she testified that she believed Bell was one of the robbers, that she had a feeling he was the man. In Fells v. State, 345 So.2d 618 (Miss.1977), this Court said:
“We are of the opinion, and now hold, that the principal witness to a crime may testify concerning an out-of-court identification whether it occurs in a police lineup, a personal confrontation or otherwise because the initial identification being nearest in time to the event has, in our opinion, the greater likelihood of accura *700 cy and truthfulness being undimmed by fading memory and intervening events occasioned by the passage of time. It is not intended that the foregoing be construed to eliminate a corroborating in-court identification.” 345 So.2d at 622.
Defendant’s instruction number 4, the refusal of which appellant contends was error, reads:
“The Court instructs the jury that the indictment is not evidence of guilt and does not create even a suspicion that the Defendant, McKinley Bell, may be guilty, and must play no part in your deliberations.” (Emphasis added).
We agree with the State that the language “must play no part in your deliberations” makes this instruction erroneous, misleading and confusing. Even without this objectionable language, the refusal to grant such an instruction was held by us not to constitute reversible error. Warner v. State, 222 Miss. 322, 75 So.2d 741 (1954); Howze v. State, 43 So.2d 191 (Miss.1941).
Appellant next contends that he did not give his consent to the search.of his bedroom, and that the $136.70 and the .38-caliber pistol introduced into evidence were the fruit of an unlawful search.
Defendant Bell, a minor, lived with four other children in the home of his mother. He admitted that his mother rented this house and allowed her five children to live with her. He admitted that his mother had to pass through the middle bedroom in order to go from her front bedroom to the bathroom or to the kitchen. Mrs. Bell herself consented to the search of her home, over which she had dominion and control.
In United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Supreme Court of the United States held:
“[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsent-ing person with whom that authority is shared. . . . [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.” 415 U.S. at 170-71, 94 S.Ct. at 993, 39 L.Ed.2d at 249-50.
In Maxwell v. Stephens (8th Cir. 1965) 348 F.2d 335, cert. den. 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353 (1965), reh. den. 382 U.S. 1000, 86 S.Ct. 532, 15 L.Ed.2d 490 (1965), Mr. Justice (then Circuit Judge) Blackmun, writing for the court, upheld the right of a mother to consent to the search of a room in the home shared by the defendant with his two younger brothers. See also, United States v. Peterson, 524 F.2d 167 (4th Cir. 1975), cert. den. 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976).
Finding no merit in the four errors assigned, the conviction and sentence are affirmed.
AFFIRMED.
PATTERSON, C. J., SMITH, P. J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.