418 So.2d 827 (1982)
Kirby Cortez JACKSON
v.
STATE of Mississippi.
No. 53606.
Supreme Court of Mississippi.
August 25, 1982.
*828 Kenneth C. O'Neal, Grenada, for appellant.
Bill Allain, Atty. Gen. by Amy D. Whitten, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SUGG, P.J., and HAWKINS and PRATHER, JJ.
PRATHER, Justice, for the Court:
The appellant, Kirby Cortez Jackson, was found guilty by jury trial in the Circuit Court of Grenada County of burglary of a dwelling house. Since Jackson had previously been convicted and sentenced to serve terms of more than one year each for manslaughter and robbery, he was sentenced pursuant to the habitual criminal statute, Mississippi Code Annotated section 99-19-81 (Supp. 1981) for the maximum term of imprisonment prescribed for the felony of burglary, without parole or probation.
Jackson assigns as errors, the following:
(1) That the circuit court erred by overruling the appellant's motion to suppress all evidence concerning certain items seized pursuant to a warrantless search and incriminating statements made after the warrantless search;
(2) That the circuit court erred in sentencing the appellant pursuant to Mississippi Code Annotated section 99-19-81 (Supp. 1981) when one of the appellant's prior felony convictions was not final, but was on appeal at the time of sentencing.
On June 26, 1981 the house of Carter Bugg was broken into by thieves, who stole a Winchester shotgun and a television set. Bugg and his family were temporarily living with Bugg's parents, approximately nine miles away, at the time of the burglary and there were no witnesses to the crime. Bugg did testify, however, that Kirby Cortez Jackson telephoned to his parents' home after midnight on the day of the crime to ask Bugg, who was his prior employer, for work. Bugg advised him that he had no work for him to do at the time, and Jackson then remarked that he planned to make a trip to Chicago. When Bugg checked on his home later that night he discovered that a small back window had been broken into which enabled the thieves to unlock the back door.
Gerald Tilgham was one of two officers who investigated the scene of the crime, and he noticed two sets of shoe prints at the gate in front of the house. The larger set of prints had one set of circles in the sole of the shoe; the smaller prints had a V-mark impression down the sole of the shoe. Tilgham also observed tire impressions at the gate in front of the house. Officer Robert Shields testified that his investigation and discussions with neighbors near the scene of the crime indicated that a car with a "Continental looking deal on it" was seen pulling away from Carter Bugg's home. Following the investigation of the scene of the crime Tilgham and Shields traveled to Jackson's grandmother's house in Tie Plant.
When they arrived they noticed tire impressions on a Lincoln Continental in front of the house which were similar to those seen at Bugg's house. The time was approximately 3:30 to 3:45 a.m., but the lights in the house were still on. Tilgham stated in the suppression hearing that the officer's purpose in visiting Jackson's grandmother's house was to investigate Jackson's phone call to Bugg. The grandmother permitted the officers into the house. Thereafter they claimed to have seen two sets of shoes with prints comparable to those found at the gate. The officers asked Jackson and his wife, Myrtle, to step outside so that they could answer some questions. When outside, Jackson was asked to open the trunk of his car, which he did voluntarily. Inside the trunk of the car was Bugg's shotgun. The two officers testified that they had in no way coerced Jackson to consent to this search but that it was purely voluntary on his part. During the suppression hearing Officer Tilgham stated *829 that Jackson and his wife, Myrtle, appeared to be fairly drunk. Officer Shields added at the suppression hearing that Jackson claimed to know nothing about the gun and stated that he had loaned his car earlier that day to a friend. Jackson and his wife, Myrtle, were then read their rights and placed under arrest. The two defendants were placed in the officers' cars separately to be transported to the Grenada County Sheriff's office. About one mile down the road Myrtle Jackson told Officer Tilgham that she had seen Kirby take the television set behind the house. Officer Shields and Jackson were radioed to come back, and Jackson subsequently retrieved the television set from under a raincoat in a cornpatch behind his grandmother's house. Jackson and his wife were taken to the sheriff's office where they again were read their rights and where Jackson signed a waiver of rights form and a voluntary statement admitting that he had broken into Bugg's home and stolen the property.
There was a motion to suppress evidence received by virtue of this warrantless search and at that hearing Kirby Jackson testified with regard to those matters only. His testimony was that he was offered a deal by the officers if he signed the statements and that he did so on their promise. He also claimed that he signed the statements before they were filled in and that he in fact did not consent to the search of his car.
Kirby Cortez Jackson was tried on July 29, 1981, and the jury returned a verdict of guilty of burglary. At the sentence enhancement hearing the Circuit Clerk of Grenada County introduced court records showing that Kirby Jackson had been convicted and sentenced to a term of three years in the state penitentiary for manslaughter and that he had been convicted and sentenced to a term of seven years in the state penitentiary for robbery. The appellant objected to the introduction of the latter record since the conviction at that time was still on appeal to the Mississippi Supreme Court. The sheriff of Grenada County testified that he had known Jackson for practically all of Jackson's life and that Jackson had been convicted and sentenced to the two above felony crimes and was the person identified in the judgments. The circuit court at that point sentenced the appellant to ten years in the state penitentiary and further ordered that the sentence should neither be reduced nor should the defendant be put on parole.

I.
The appellant's first contention is that the circuit court erred in overruling the defendant's motion to suppress all evidence seized pursuant to a warrantless search and any incriminating statements made thereafter. All searches without a valid warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Loper v. State, 330 So.2d 265 (Miss. 1976), and the burden is on the officer to show that the search comes within one of the exceptions. Cutchens v. State, 310 So.2d 273 (Miss. 1975); Luton v. State, 287 So.2d 269 (Miss. 1973).
If a search is deemed unreasonable, then all evidence seized during that search is inadmissible for the jury or court to consider as evidence of the defendant's guilt. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Joyce v. State, 227 Miss. 854, 87 So.2d 92 (1956). Furthermore, this exclusionary rule extends beyond the evidence directly seized in the unreasonable search to preclude consideration of subsequently acquired evidence which was gained indirectly as the result of the unreasonable search. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (confessions obtained during illegal detention inadmissible even if Miranda warnings given unless there is a sufficient break in causal connection between illegality and confession); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d *830 441 (1963) (information gained during illegal arrest led to discovery of evidence elsewhere); Vanderlin v. State, 267 So.2d 311 (Miss. 1972) (error to admit in evidence admission of defendant when confronted with results of search that marijuana found as result of unlawful search belonged to him); Thompson v. State, 206 So.2d 195 (Miss. 1968) (defendant's confession which was a direct consequence of an unlawful search of her house was inadmissible as one of the fruits of the unlawful search). Thus, if the search of the appellant's car trunk is held to be unreasonable, the shotgun, as well as the subsequently obtained television set and confessions, would be inadmissible.
The prosecution offers as justification for the warrantless search the fact that the appellant consented to the search of his car trunk. One of the specifically established exceptions to the requirements of both a warrant and probable cause to permit a search is a search conducted pursuant to consent. Matthews v. State, 394 So.2d 304 (Miss. 1981); Brown v. State, 281 So.2d 924 (Miss. 1973). When the prosecution attempts to justify a search on the basis of consent, it must demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Such voluntariness is to be determined from considering the totality of the circumstances surrounding the alleged consent.
In the instant case, both officers testified that Kirby Jackson not only consented to the search, but actually opened the car trunk himself. The officers further testified that there was no coercion of Jackson to force the consent to search. However, Officer Tilgham, during the pretrial suppression hearing, stated that both Kirby and Myrtle appeared to be fairly drunk, and during the hearing on motion to suppress the voluntary statement, Kirby Jackson denied that he gave the alleged consent to search the trunk. Myrtle Jackson, who was present at the time of the search, did not testify on these matters.
With regard to the conflicting testimony, it is apparent that the trial court judge accepted the testimony of the two officers and rejected that of Jackson. Insofar as this involved an evaluation of credibility, this Court is not in a position to hold that the trial court judge erred in that regard. As the Court stated previously in Luton v. State, 287 So.2d 269 (Miss. 1974):
It was a classic question of fact to be decided by the judge himself who had the opportunity of seeing and observing each of the witnesses who testified. The trial judge gave to each bit of the testimony such weight and worth as he deemed proper under the existing circumstances. [287 So.2d at 272].
Thus, the Court accepts the lower court's finding of fact with regard to the issue of consent. We, therefore, conclude that the consent exception to the warrant requirement permits the admission of the evidence in question.

II.
The appellant also contended that the circuit court erred in sentencing the appellant pursuant to section 99-19-81 of Mississippi Code Annotated (Supp. 1981) when one of the prior felony convictions of the appellant was not final, but on appeal at the time of sentencing. Section 99-19-81 provides:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Under the majority rule of the various jurisdictions, it is held that a judgment of conviction that is the subject of a pending appeal cannot support enhanced penalties. *831 State v. Alexander, 10 Wash. App. 942, 521 P.2d 57 (1974) (error in habitual criminal proceedings to consider two convictions which were on appeal at time of hearing); Arbuckle v. State, 132 Tex.Crim.R. 371, 105 S.W.2d 219 (1937) (if appeal has been taken from judgment of guilty in trial court, conviction does not become final until affirmance); 39 Am.Jur.2d Habitual Criminals § 8 (1968). The contrary rule is followed in a healthy minority. United States v. Allen, 425 F. Supp. 78 (E.D.Pa. 1977) (defendant was second offender even though appeal from prior conviction was pending at time second conviction occurred); People v. District Court, Etc., 192 Colo. 375, 559 P.2d 235 (1977) (phrase "prior conviction" as used in habitual criminal statute includes judgments of convictions that are on appeal); People v. Clapp, 67 Cal. App.2d 197, 153 P.2d 758 (1944) (person has been convicted even though the judgment has been suspended during appeal).
The appellant relies upon the case of Williams v. State, 125 Miss. 347, 87 So. 672 (1921), where the defendant in that case had received an enhanced sentence for the unlawful sale of liquor due to prior convictions. However, the prior convictions were on appeal at the time of the more recent trial. The court ruled in that appellant's favor by stating:
[I]t follows that these two cases are still pending in the circuit court and that the defendant has not been convicted and punished for two former offenses under this statute. His conviction under this indictment is therefore for a first offense and he should have been sentenced therefor under section 1(a) of this law... . [125 Miss. at 355, 87 So. at 673].
This Court is of the opinion that Williams v. State, supra, is distinguishable from the facts and statutory authority of the case at bar.
In Williams v. State, supra, Williams was prosecuted under a statute which provided for punishment "by imprisonment in the state penitentiary not less than one year nor more than five years, if the conviction is for an offense under this Act committed after the person convicted has been convicted and punished for two former offenses thereunder." (Emphasis added). In the Williams case the two prior offenses from the justice of the peace court were on appeal to the circuit court at the time Williams was sentenced as a third offender. In remanding the case for sentencing the Court noted that the defendant in the two prior offenses had not been convicted and punished as the statute provided, and that, therefore, the last conviction must be sentenced as a first offense for sentencing purposes. Under our practice Williams was entitled to a trial de novo in the circuit court; therefore, before his trial de novo, he did not stand convicted. Mississippi Code Annotated section 11-51-91 (1972) (trial of cases on appeal from justice of the peace); National Hardwood Lumber Asso. v. Gilmore-Puckett Lumber Co., 210 Miss. 354, 49 So.2d 689 (1951) (appeals from judgments of justices of the peace are to be tried anew); Lucedale Comm. Co. v. Strength, 163 Miss. 346, 141 So. 769 (1932) (on appeal from justice court, circuit court's jurisdiction is original, and is tried de novo).
The more recent case of Nicholson v. State, 254 So.2d 881 (Miss. 1971) is a case of our jurisdiction more nearly analogous to the case at bar although it does not address the issue of former convictions on appeal for purposes of enhancement of a subsequent sentence. In Nicholson, supra, our Court held that a defendant may be impeached by the use of a previous conviction which is on appeal even though the earlier conviction was later reversed by the Supreme Court and remanded for a new trial.
The basis for so holding is that unless and until the judgment of the trial court is reversed, the defendant stands convicted, is no longer presumed to be innocent of the crime for which he is convicted, and may be impeached by that conviction... . When a jury in circuit court returns a verdict of guilty, it is a conviction of the crime charged, and unless and until it is reversed by this Court, the conviction stands, and may be used for impeachment purposes.... [254 So.2d at 884].
*832 The Mississippi habitual criminal statute, Mississippi Code Annotated section 99-19-81 (Supp. 1981), was effective from and after January 1, 1977 and was enacted following the Supreme Court decision of Nicholson v. State, supra, which stated that when a jury and circuit court returned a verdict of guilty, it was a conviction of the crime charged. It is apparent that the legislative intent by the 1977 enactment was to adopt that interpretation of "conviction" in the Nicholson case. The intent of the Legislature in enacting an habitual criminal statute was to protect the public from those criminals who are apparently indifferent to the normal mode of punishment. If we accept the appellant's contention, the Court will encourage frivolous appeals and provide insurance from habitual criminal status. Finally, we choose not to address the question of the appellant's remedy if one of his convictions is reversed, since that issue is not before the Court.
AFFIRMED.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and BROOM, ROY NOBLE LEE, HAWKINS and BOWLING, JJ., concur.
DAN M. LEE, J., takes no part.