**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2024-KA-00797-COA**

**JESSE LEE ROBINSON**                                                                              **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                              **APPELLEE**

DATE OF JUDGMENT:            06/14/2024
TRIAL JUDGE:            HON. KELLY LEE MIMS
COURT FROM WHICH APPEALED:            PRENTISS COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:            OFFICE OF STATE PUBLIC DEFENDER
            BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:            OFFICE OF THE ATTORNEY GENERAL
            BY: ALLISON ELIZABETH HORNE
DISTRICT ATTORNEY:            JASON D. HERRING
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:            AFFIRMED - 10/14/2025
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., WESTBROOKS AND EMFINGER, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     Jesse Lee Robinson was found guilty of possession of methamphetamine (Count I) and possession of lysergic acid diethylamide (LSD) (Count II) by a Prentiss County jury. The trial court sentenced him to serve three years for Count I and eight years for Count II, set to run consecutively in the custody of the Mississippi Department of Corrections. Robinson appeals, arguing the search and seizure of the drugs was illegal and that his counsel was ineffective for failing to move to suppress this evidence. Finding no error, we affirm.

**STATEMENT OF FACTS**

¶2.     On June 25, 2020, law enforcement from the Prentiss County Sheriff's Department responded to a 911 call. A woman had emerged from the woods near the caller's residence in distress, covered with bruises, cuts, and scratch marks. When law enforcement arrived at the residence, the woman said Robinson had assaulted her. The officers knew that Robinson worked with his father, Bryan, at a nearby vehicle repair shop that his father owned.

¶3.     Robinson worked from a metal desk in the shop where he kept his vehicle dealer paperwork. The desk was situated in the open between two bay doors; it was not in an office. Bryan testified that Robinson did not own the desk but "leased [the desk] basically."[1] Bryan never used the desk or stored items in it. Bryan also testified the injured woman was Robinson's girlfriend who had been living with him and Robinson.

¶4.     Several officers drove to the shop to speak with Robinson about the alleged assault. Bryan had just arrived in the parking lot and was met by the officers. Robinson was already inside the shop. Bryan testified that only he and his son worked at the shop—Bryan worked on vehicles, and Robinson sold vehicles.

¶5.     The officers asked Bryan if they could talk to Robinson, and Bryan agreed, letting the officers inside the shop while he stayed outside. Deputy Aaron Stolz testified that when he and Investigator Torie Jumper entered, Robinson said, "Don't come in, don't come in!" Both officers testified that Robinson then ran towards his desk, and with one arm, strewed a powder-like substance across the top of the desk. Deputy Stolz grabbed Robinson and

---

[1] Investigator Jumper, however, testified that based on her investigation, Robinson owned the desk.

patted him down for weapons. Robinson, who was agitated, refused to cooperate, and exclaimed, "I didn't do nothing," referring to his girlfriend, and said she was "crazy." Then, Robinson admitted that he and his girlfriend had had an altercation. Deputy Stolz placed Robinson in handcuffs, charging him with misdemeanor "family disturbance."

¶6.     During the arrest, officers saw on the desk what they described as a "powder-like" or "crystal-like" substance that Robinson had strewn across it, which they suspected was methamphetamine. They also saw on the desk, in plain view, duct tape and several glass pipes, as well as a rifle propped behind the desk and against the wall. The officers then exited the building, taking Robinson outside where his father was. Nobody else was inside the building.

¶7.     Wanting to investigate the premises further for drugs, Investigator Jumper contacted a justice court judge about obtaining a search warrant. The judge advised her to obtain consent from Bryan to search the shop instead of a warrant. Bryan agreed to the search and signed a "Permission to Search Form," allowing the officers to search the shop.[2] After obtaining consent, Deputy Stolz, Investigator Jumper, and another officer reentered the shop and conducted their search. They began searching around the desk area, collecting the "crystal-like substance" off the top of the desk. Deputy Stolz also found a clear container with a magnet attached to the desk's bottom corner. A powdery residue was inside it. Drug paraphernalia was also collected from the top of the desk—several glass "meth pipes" (one

_____

[2] At trial, however, Bryan claimed he had a "verbal agreement" with Investigator Jumper to limit the search to the desk area only. Bryan testified that the officers complied and focused their search to the desk.

3

clean and several used), the clear magnetic container, an earbud case holding several probable marijuana joints, Ziploc bags, zip ties, two sets of scales, and a vacuum-sealing machine.

¶8.     There was also a busted cell phone lying on the desk. Investigator Jumper testified that she picked it up, felt it, and took off the phone's case. She testified that "[i]nside[,] between the case and the phone[,] was a $100 bill" and a piece of aluminum foil neatly folded up. Investigator Jumper carefully opened it to find a sheet of "little squares," which was thought to be a blotter sheet of LSD.

¶9.     Robinson was transported to the Prentiss County jail for the family disturbance charge, with a "hold" placed on him for the possible drug charges. When Investigator Jumper returned to the station, she gave the alleged methamphetamine and LSD blotter sheet to Officer Joey Clark, a narcotics officer, who took over the investigation. He performed a field test on one of the sheet's fourteen square stamps, which tested positive for LSD. Officer Clark then turned the drugs over to the local crime lab for further testing. Those tests confirmed the square stamps were fourteen dosage units of LSD, a Schedule I drug, and the crystal-like substance was .18 grams of methamphetamine, a Schedule II drug.

¶10.    Before trial and against the advice of defense counsel, Robinson, pro se, made an ore tenus motion to suppress the drugs found at Bryan's shop. Robinson contended that the officers never asked for consent to enter the shop initially. He also claimed that Investigator Jumper told him because the officers did not have a search warrant to enter the building, the evidence obtained was inadmissible. In response, the State presented the testimony of

4

Investigator Jumper and Bryan, detailed above. Robinson concluded his argument by stating the evidence was not seized incident to his arrest for misdemeanor family disturbance but was seized after his arrest and departure from the building; so any consent that was given for the officers to reenter and search the building needed to be in relation to the domestic crime and not the possible narcotics crime. The trial judge denied Robinson's motion, finding the officers had obtained proper consent from Bryan to enter the building initially, and Investigator Jumper properly obtained consent to reenter the building through the consent-to-search form after seeing the drugs in plain view on the desk. No mention was made by either party or the trial court specifically about the search of the cell phone case and the LSD seized.

## ANALYSIS

### I.     Motion to Suppress Evidence

¶11.    Robinson argues that the trial court erred in denying his motion to suppress the drugs found during the search of his desk and cell phone case. He contends that the warrantless search of his desk and cell phone was improper because there was no applicable exception to the warrant requirement. Specifically, he claims there was no valid consent to search the desk; the plain-view doctrine does not apply; the search was not incident to a valid arrest; and there were no exigent circumstances. Robinson argues that the cell phone was a closed container, and while in plain view, there was nothing inherently incriminating to justify dismantling the cell phone. Thus, he claims his convictions should be reversed and rendered.

5

¶12. We find the search of the desk was valid because Bryan gave valid consent to search the shop and its property. Because a valid consent resolves Robinson's other issues, we will not discuss them. Regarding the search of the cell phone, Robinson's pro se motion to suppress evidence, made against the advice of counsel, never mentioned it specifically, nor did Robinson mention it during the hearing. Further, the trial court based its ruling on the propriety of the consent-to-search form and the seizure of the drugs in plain view on the desk. Now, on appeal, Robinson's counsel argues that the cell phone was a closed container that was improperly dismantled to find the LSD. It is well settled that "[i]ssues not brought before the trial court are deemed waived and may not be raised for the first time on appeal." *Smith v. State*, 986 So. 2d 290, 296 (¶16) (Miss. 2008) (quoting *Tate v. State*, 912 So. 2d 919, 928 (¶27) (Miss. 2005)). Because Robinson did not raise the issue of the search of the cell phone before the trial court, the issue is waived.

¶13. The Mississippi Supreme Court has adopted a mixed standard of review for the denial of a motion to suppress involving the Fourth Amendment. *Dies v. State*, 926 So. 2d 910, 917 (¶20) (Miss. 2006). "Determinations of . . . probable cause should be reviewed de novo." *Id.* "However, [the reviewing court is] bound by the trial judge's findings as to the underlying 'historical facts' unless those findings are 'clearly erroneous.'" *Holloway v. State*, 282 So. 3d 537, 541-42 (¶13) (Miss. Ct. App. 2019) (quoting *Dies*, 926 So. 2d at 917 (¶20)). The admission or exclusion of evidence is reviewed for an abuse of discretion. *Gillett v. State*, 56 So. 3d 469, 482 (¶21) (Miss. 2010).

¶14. Under the Fourth Amendment to the United States Constitution, an individual has the

6

right to be free from unreasonable searches and seizures "of their persons, houses, papers, and effects." *Eaddy v. State*, 63 So. 3d 1209, 1212-13 (¶12) (Miss. 2011); U.S. Const. amend. IV; *accord* Miss. Const. art. 3, § 23. Warrantless searches are generally considered unreasonable and prohibited unless "a few specifically established and well-delineated exceptions" apply. *Katz v. United States*, 389 U.S. 347, 357 (1967); *Galloway v. State*, 122 So. 3d 614, 669 (¶182) (Miss. 2013). These exceptions to the warrant requirement include a consensual search, a search incident to arrest, a search under exigent circumstances if probable cause exists, and the plain-view doctrine, among others. *Galloway*, 122 So. 3d at 669 (¶182); *Graves v. State*, 708 So. 2d 858, 863 (¶22) (Miss. 1997). "The State bears the burden to show that a warrantless search comes within an exception for evidence seized thereupon to be admissible." *Galloway*, 122 So. 3d at 669 (¶182) (citing *Jackson v. State*, 418 So. 2d 827, 829 (Miss. 1982)).

¶15. Robinson argues that Bryan's consent to search the shop by signing the permission form was invalid. Robinson contends that because Bryan testified that Robinson "leased [the desk,] basically," the issue is whether the landlord, Bryan, had authority to consent to search the tenant Robinson's area and property, which would include the desk. Robinson concludes that Bryan did not have such authority. We disagree.

¶16. "A voluntary consent to a search eliminates an officer's need to obtain a search warrant." *Graves*, 708 So. 2d at 863 (¶23). The prosecution "is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to

the premises or effects sought to be inspected." *Hudson v. State*, 475 So. 2d 156, 158 (Miss. 1985) (citing *Bell v. State*, 360 So. 2d 697, 700 (Miss. 1978)).

¶17.    Here, Bryan first gave oral consent to Deputy Stolz and Investigator Jumper to go into the shop and speak with Robinson.  Once inside the shop, the officers saw Robinson run towards the desk and strew a powder-like substance, in plain-view, across the top of it.  They also saw on the desk, in plain view, drug paraphernalia and a rifle.  Officers then arrested Robinson and took him outside because he was noticeably agitated and refusing to cooperate.

¶18.    The second consent Bryan gave, at issue here, occurred when the officers wanted to reenter the shop to take a second look inside based upon what they had seen in plain view while arresting Robinson.  Investigator Jumper called a justice court judge about obtaining a search warrant, but the judge advised her to have Bryan, as owner of the shop, sign a "Permission to Search" form, which he did.  The form allowed the officers "to conduct a search of the premises and property, including all buildings and vehicles both inside and outside of the property" without a search warrant.  Additionally, the form gave the officers permission to seize "any letters, papers, materials or any other property or things which they desire as evidence for criminal prosecution in the case . . . under investigation."  The officers then reentered the shop and searched around the desk area.  They seized the powder-like substance from the top of the desk, the clear container with powder residue attached to the desk by a magnet, glass pipes, and other various drug paraphernalia.  The trial court based its denial of Robinson's pro se motion to suppress on finding the officers obtained proper

consent both to enter the shop initially and later to reenter the building to search because the drugs were in plain view on the desk.

¶19. Robinson now claims the consent form did not apply to the desk. Robinson bases his argument on an alleged landlord-tenant relationship between him and Bryan regarding the search of the desk. He cites *Chapman v. United States*, 365 U.S. 610, 612-15 (1961), for the proposition that the search of a rented premises without a warrant, or the presence of the tenant, based upon consent obtained only from the landlord, is unlawful, and the evidence seized is inadmissible. Additionally, Robinson cites for support *Scott v. State*, 266 So. 2d 567, 569 (Miss. 1972), which held that when a person rents or possesses a room or an apartment, it makes such a person the owner of the premises "for the time being," who is entitled to protections from illegal search and seizures.

¶20. Robinson maintains that he was a tenant leasing the desk from Bryan; thus, he would be considered an "owner" of the desk and had control of the desk during the time of the search. As owner of the desk at the time, because he did not consent, the search of the desk was illegal in his view. Robinson also contends that since the desk was not shared, but one he used exclusively, there was no co-tenancy arrangement, and Bryan could not give consent to search the desk.

¶21. Bryan's consent to search the premises, including the desk, was voluntary and valid. Bryan was the undisputable owner of the shop and the land upon which it was situated. There was conflicting testimony about whether Bryan or Robinson owned the desk—Bryan testified that Robinson did not own the desk but leased it, while Investigator Jumper testified

9

that she believed Robinson owned the desk. Regardless, there was no evidence presented of a lease agreement for the desk between Bryan and Robinson, only Bryan's vague testimony that Robinson "basically leased" the desk. Further, the form that Bryan signed gave officers consent to search the shop and all personal property within it.

¶22. The cases Robinson cites, *Chapman* and *Scott*, are distinguishable because they deal with rented premises, not rented personal property, as alleged here. Bryan's written permission to search the building would have included the desk. Further, the powdery substance on the desk was in plain view along with drug paraphernalia. There is no evidence that the officers searched inside the desk's drawers. Bryan had the authority to consent to the search of the desk, and the officers did not exceed that scope.

¶23. The trial court did not abuse its discretion in denying Robinson's pro se motion to suppress the evidence based upon a valid consent and plain view. Because valid consent of the search is dispositive, we decline to address Robinson's other arguments related to the search of the desk.

## II.     Ineffective Assistance of Counsel

¶24. Robinson argues his trial counsel was constitutionally ineffective for failing to file a motion to suppress the drugs seized without a warrant. He claims if his counsel had filed his own motion, the trial court would have granted it and suppressed the evidence.

¶25. Whether a defendant has received ineffective assistance of counsel is a two-part inquiry: first, "the defendant must show that counsel's performance was deficient," and "[s]econd, the defendant must show that the deficient performance prejudiced the defense."

10

*Taylor v. State*, 167 So. 3d 1143, 1146 (¶5) (Miss. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "There is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that 'the challenged action might be considered sound trial strategy.'" *Burford v. State*, 320 So. 3d 502, 510 (¶13) (Miss. 2021) (quoting *Strickland*, 466 U.S. at 689).

¶26. Ineffective assistance of counsel claims may be addressed on direct appeal when "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Colenburg v. State*, 735 So. 2d 1099, 1101 (¶5) (Miss. Ct. App. 1999) (citing *Read v. State*, 430 So. 2d 832, 841 (Miss. 1983)). The general rule, however, is that claims of ineffective assistance of counsel are more appropriately raised in post-conviction collateral proceedings. *Burford*, 320 So. 3d at 510 (¶15). Here, even though both parties stipulate that the record is adequate for appellate review of the issue, we find the claim would be more properly raised in post-conviction relief proceedings regarding the search (dismantling) of the cell phone without a warrant. Accordingly, we decline to address this part of the claim without prejudice to Robinson's ability to raise the argument concerning counsel's not seeking to suppress the evidence of LSD in the cell phone case in a properly filed motion for post-conviction relief. As previously found, though, there was no error in the trial court's failing to suppress the methamphetamine found on the desk; accordingly, we find no prejudice in trial counsel's failure to file a separate motion to suppress that evidence.

## CONCLUSION

¶27.    The trial court did not err in denying Robinson's pro se motion to suppress the drugs. Further, Robinson's claim of ineffective assistance of counsel regarding LSD found in the dismantled cell phone is denied without prejudice.    Therefore, we affirm Robinson's convictions and sentences.

¶28.    **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND McCARTY, JJ.  WEDDLE, J., NOT PARTICIPATING.**

**WESTBROOKS, J., SPECIALLY CONCURRING:**

¶29.    I concur with the majority that Robinson's challenge to the constitutionality of the search of his phone was not preserved for direct appeal, and I concur that his claim of ineffective assistance of counsel is preserved without prejudice to his right to raise this issue in a motion for post-conviction relief.[3] I write separately to discuss briefly why the search of the phone and discovery of the LSD was constitutionally suspect. Without a search warrant, the officer at the scene seized Robinson's personal phone on his desk and removed the phone case. Inside the phone case was a $100 bill and a blotter sheet of LSD. Robinson was ultimately convicted of possession of LSD and, for that count, sentenced to eight years to be served consecutively to his three-year sentence for possession of methamphetamine. The building owner's consent to search the premises did not extend to the contents of the

---

[3] *See* Miss. Code Ann. § 99-39-5(1)(a)-(j) (Rev. 2020).

12

phone case.[4] And, unlike the methamphetamine residue on the desk, the contents of the phone case were not in plain view to excuse a warrantless search and seizure.

¶30.    Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Turnage v. State*, 389 So. 3d 1073, 1080 (¶17) (Miss. Ct. App. 2024) (citing *Walker v. State*, 881 So. 2d 820, 827 (¶19) (Miss. 2024)). But "the plain view doctrine does not eliminate the requirement that seizure of contraband discovered while in plain view must comply with the Fourth Amendment requirements and in the absence of exigent circumstances be based on a valid warrant." *Isaacks v. State*, 350 So. 2d 1340, 1345 (Miss. 1977) (quotation marks omitted). Here, the phone on Robinson's desk was not apparently incriminating (unlike the methamphetamine residue). Additionally, even when probable cause exists for obtaining a search warrant, "probable cause does not justify a warrantless search . . . ." *Id.*; *see also Joyce v. State*, 227 Miss. 854, 87 So. 2d 92 (1956); *Coolidge v. New Hampshire*, 403 U.S. 443 (1971).

¶31.    The consent of the building owner to search the premises cannot, under our precedent, reasonably extend to the physical contents of Robinson's phone case. Consent to search premises may be provided by someone with common authority or co-tenancy over the area. *Hudson v. State*, 475 So. 2d 156, 158-59 (Miss. 1985). But the scope of authority for third persons to grant consent is subject to limits under an objectively reasonable

---

[4] Robinson also maintains that probable cause did not exist to search the phone.

13

standard. *May v. State*, 222 So. 3d 1074, 1080 (¶15) (Miss. Ct. App. 2016) (citing *O'Donnell v. State*, 173 So. 3d 907, 914 (¶13) (Miss. Ct. App. 2015)). In *May*, this Court reversed a conviction after concluding that a reasonable person could not have considered a request to remove an individual's shoes to operate as a request to search the contents of closed containers in the shoes. *Id.* Similarly, here, the building owner's consent to search the premises does not reasonably extend to removing the case from Robinson's personal phone.

¶32. While the trial court did not cite the search-incident-to-arrest exception to the warrant requirement, the State argues on appeal that this exception would also apply to justify the removal of the phone case. This argument is unconvincing given that "[i]n the case of a search incident to arrest, the exception to the warrant requirement is founded upon the reasonable concern that the arrestee might have a weapon on his person or within reach, and that he may attempt to destroy evidence which is within his grasp." *Ferrell v. State*, 649 So. 2d 831, 832-34 (Miss. 1995) (reversing and rendering a conviction of possession of illegal substance where search of arrestee's car occurred when arrestee was secured and handcuffed in police vehicle). Robinson's situation is parallel to the arrestee in *Ferrell*, whose conviction was reversed and rendered because the only evidence supporting the conviction should have been suppressed.

¶33. Search and seizure provisions are to be construed strictly in favor of the individual and against the State. *Barker v. State*, 241 So. 2d 355, 358 (Miss. 1970). The search and seizure of the evidence that supported Robinson's conviction of possession of LSD was constitutionally suspect. However, this issue was not preserved for direct appeal. Therefore,

I specially concur.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**